Essex,
March,
1837.

## ERASTUS WOODWARD *v.* GATES & CHENEY.

Where *W.* sold personal property to *J*, and took notes, and a mortgage, to secure the payment of the sums, but the property was immediately put into the possession of *J.*, who continued in the use and possession thereof: *Held*, that the mortgage was void as against the creditors of *J.*

Where such mortgage was executed in New Hampshire, the mortgago, residing in this State: *Held*, that the law of New Hampshire did no make valid such mortgage in this State; as the mortgage was not, an could not be recorded in this State, in pursuance of the laws of Nev Hampshire.

This was an action of trover for a horse. Plea not guilty On the trial of said issue by the jury, it was conceded that, on the 24th day of March, 1835, the plaintiff owned said horse. The plaintiff then offered to give evidence, tending to prove that he resided at Jefferson, in the State of New Hampshire that John Jewell of Lunenburgh, in said county of Essex, calle on the plaintiff, at Whitefield, in New Hampshire, and contracted with him for said horse, together with three others, and some other personal property, consisting of a wagon, sled, and four harnesses, and executed therefor his note to the plaintiff, and a mortgage of the same property, conditioned to be void on the payment of the purchase money. To the admission of said mortgage the defendants objected, but the same was admitte' by the court. At the execution and delivery of said note and mortgage, the said horses and other property were delivered to Jewell, who took the same to Lunenburgh, where he resided until the same were attached, as herein after stated. Plaintif procured said mortgage to be recorded, on the 6th day of April, 1835, under a law of New Hampshire, which provides "that no mortgage of personal property shall be valid, against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by the mortgagee, or unless the said mortgage be recorded in the office of the clerk of the town, where the mortgagor shall reside, at the time of making the same."

The defendants gave evidence, tending to shew that, on the 8th day of April, 1835, said horses, being in the possession of said Jewell, and at said Lunenburgh, were attached by said Gates, on a writ in favor of said Cheney, against said Jewell, said Gates being constable of Lunenburgh, who delivered said horses to said Cheney, for safe keeping. Said writ of attachment was

duly returned to the justice of the peace to whom it was return-
able, and afterwards prosecuted to judgment against said Jewell.
The plaintiff produced testimony to shew that, after said attach-
ment, and before said judgment, and before the service of the
plaintiff's writ in this suit, and while the horse was in the pos-
session of Cheney, the plaintiff demanded the horse of Cheney,
who refused to deliver him.

The court instructed the jury, that, if the testimony on the
part of the plaintiff was by them believed, the plaintiff was en-
titled to recover. To all which the defendants excepted, and
the case passed to this court for revision.

*E. Paddock, and Heywood, for defendants.*

In giving effect to contracts, it is important to look to the in-
tention of the parties. In the sale of the property from Wood-
ward to Jewell, it is evident that it was the intention of the par-
ties to make an absolute sale to Jewell, and to take security
back upon the property, under the mortgage law of New Hamp-
shire. This is shown by the note given by Jewell to Wood-
ward, the change of possession of the property, and the lan-
guage of the deed from Jewell to Woodward.

But the property was not mortgaged in such a manner as to
hold under the New Hampshire statute, which requires the
mortgage to be recorded in the office of the clerk of the town,
where the mortgagor shall reside, at the time of making the same.
This was not complied with. The mortgage was recorded in
Jefferson, the place where the mortgagee lived. This record
could be no notice to the creditors of Jewell. The act was in-
tended for cases only where the mortgagor is an inhabitant of
New Hampshire.

If the object of Woodward and Jewell was not carried into
effect, in the manner they intended, will the court give to the
transaction an effect that they did not intend, and call this *a con-
ditional sale?* Jewell gave his note for the property, which
Woodward could at any time sue and collect. There was no
condition, by which Jewell could compel Woodward to take the
property back in discharge of the note. The property was at
the risk of Jewell. If the whole had been accidentally de-
stroyed, he must still pay the note. Nor could it have been at-
tached as the property of Woodward. If this was a condition-
al sale, when would it become absolute? Upon payment of
half the note? Or would it remain conditional till the payment

Essex,
March,
1837.

Woodward
*v*
Gates and
Cheney

Essex,
March,
1837.

Woodward
v
Gates and
Cheney.

of the whole ? The Massachusetts cases, upon the subject of conditional sales, differ very much from this. In those cases, there was no note given, and the contracts were conditional, in express terms. *Whitewell et al.* v. *Vincent*, 4 Pick. Rep. 449. *Smith* v. *Dennie*, 5 id. 262.

To sustain this case in favor of Woodward, would open a new door to fraud. Property can in this way be easily covered by fraudulent mortgages. It would go far to prostrate the salutary principles, so long practised upon by our courts, in relation to sales fraudulent in law.

*S. Cushman and J. Steele, for plaintiff.*

I. A contract, valid by the law of the place where it is made, is valid every where, *jure gentium.* 2 Kent's Com. 364, Story's conflict of laws, 201, 217, 219. *Pearsall* v. *Dwight*, 2 Mass. Rep. 88. *Dyer* v. *Hunt*, 5 N. H. Rep. 401.

The *lex loci contractus*, where it creates a lien on personal property, is to govern. Story's Conflict of Laws, 268. Id. 335.

The law of New Hampshire requires that the mortgage shall be recorded in the office of the clerk of the town where the mortgagor shall *reside at the time of making the same.*

In this case, Jewell, the mortgagor, resided in Lunenburgh, Vermont—he had no residence at the time in New Hampshire. Where, then, should the mortgage have been recorded ? In order to solve the question, the object of the legislature of New-Hampshire, in passing the act, must be considered, and that must have been,

1. To enable creditors to secure their just debts; and

2. To give such publicity to mortgages of personal property, as will prevent other creditors from incurring unnecessary cost.

If the creditors of Jewell, in New Hampshire, were in search of a mortgage on the property in question, where would they make inquiry ?

The object the *parties* had in view, would be clearly accomplished by pronouncing the mortgage valid; and their intention is to be carried into effect, if consistently practicable. Story's Conflict of laws, 270. Id. 232.

There was no *fraud* on creditors.

II. By the civil law, the property remains in the vendor until *payment*, even although the vendee has the possession. 2 Kent's Com. 392. And where a condition is to be performed, if the vendee has possession, he will be considered as a trustee

for the owner or vendor. 2 Id. 391. *Ward* v. *Shaw*, 7 Wendell's Rep. 404.

Essex,
March,
1837.

Woodward
v.
Gates and
Cheney.

III. Whether the mortagage is valid, as a mortgage or not, it is valid as a bill of sale, and operates as a conveyance of the property—the note was payable on demand, the mortgage was broken, *eo instanti*, and the property was absolutely in the plaintiff. Jewell was liable to be dispossessed at any moment.

He had no other interest in the horse, than that of a borrower.

The mortgage, bill of sale or agreement, and the note, were executed at the same time, and were all parts and parcel of the same transaction.

The opinion of the court was delivered by

WILLIAMS, Ch. J. The sale of the property in question, by the plaintiff to Jewell, appears to have been perfected. A note was executed for the purchase money and a mortgage of the same property, to secure the payment. In this mortgage it is recited that the property was bought by Jewell of the plaintiff, and Jewell covenanted that he was the owner. The contract between the parties cannot be treated as a sale by the plaintiff to Jewell, not to be perfected or completed until the performance of the condition. The title of the plaintiff accrued by the mortgage executed to him by Jewell, on the 24th of March, 1835, and is not aided or strengthened by his previous ownership. As Jewell continued in possession of the property sold, from the date of that mortgage until the time it was taken in Lunenburgh, by virtue of an attachment at the suit of Cheney, one of the present defendants, against Jewell, the sale or mortgage is inoperative as against the creditors of Jewell, however valid it may be between the parties. We have not, in this state, departed from the doctrine of the common law on the subject, but have uniformly adhered to the principle, that a sale of personal property, unaccompanied by a change of possession, is inoperative and void, as against the creditors of the vendor; and this principle has been considered as applicable to mortgages of personal property, where the mortgagor purchased the property of the mortgagee, and, at the same time, executed a mortgage of the same, to secure the purchase money. The case of *Tobias* v. *Francis*, 3 Vt. Rep. 425, is very similar to the case under consideration, and, indeed, is decisive of the question. If there should be any exception to the general rule, it was required in

Essex,
March,
1837.

Woodward
v.
Gates and
Cheney.

that case much more than in this. The only question remaining is, whether the statute of New Hampshire, which is made a part of the case, protects the property of the plaintiff against the attachment made by the defendants. If the statute had been complied with, my individual opinion is, that it could not have availed the plaintiff. The property, when in this State, was subject to attachment at the suit of the creditors of the vendor, so long as his possession remained unchanged. But the statute itself was not complied with. There was no record of the mortgage in the office of the clerk of the town where the mortgagor resided, which was in Lunenburgh, in this State. The statute of that State can only apply to contracts in that State, the mortgagor residing there. The legislature of that State can make no provision to give effect to a record in this State not required by our laws. The statute was not complied with, and the plaintiff can derive no benefit in this case from its provisions. The result is, that the horse in question was liable to be taken by the defendants, as the property of Jewell, and their title is better than the plaintiff's.

The judgment of the county court must therefore be reversed.