Skiff *v.* Solace.

━━●◉●━━

ABEL P. SKIFF *v.* HENRY N. SOLACE.

*Trespass. Constructive possession. Chattel mortgage.*

Although a mortgagee of chattels may have the right, by the terms of the mortgage, to take possession of the property mortgaged, whenever he deems that he is in danger of losing the mortgage debt by delaying its collection until the time specified for its payment, yet this will not give him the constructive possession

of the property, so as to enable him to maintain trespass, unless the contingency have happened, upon which his right to take possession depends, and have been followed by some act upon his part, asserting the right.

A mortgage of chattels, executed in the state of New York, and valid, by the laws of that state, without a change of possession, will not protect the property from attachment in this state, by creditors of the mortgagor, if found here in the possession of the mortgagor, though brought here by him for a temporary purpose.

TRESPASS for two horses, a wagon and harness. Plea, the general issue, and trial by jury, June Term, 1849,—BENNETT, J., presiding.

The plaintiff proved, that the property in question belonged to one Perkins, who resided at Schroon, in the state of New York, and gave in evidence a mortgage of the property executed to the plaintiff by Perkins, at Scroon, April 27, 1848, and recorded in the proper office in the state of New York. This mortgage, reciting that Perkins was indebted to the plaintiff in the sum of $160,00, conveyed to the plaintiff, among other things, the property in question, as security for its payment, and contained a condition, that, if Perkins should pay to the plaintiff the debt aforesaid, with the interest,—paying $50,00 within three months from the date of the mortgage, $50,00 in six months, and the residue in one year, then the mortgage should be void; but that, if default should be made in such payments, or if the plaintiff should at any time deem himself in danger of losing the debt, by delaying collection until the time specified for its payment, the plaintiff might take possession of the mortgaged property at any time, either before or after the expiration of the time specified, and sell it, or so much as should be necessary to satisfy the debt, interest and expenses,—giving such notice as is required by law for constables' sales. The plaintiff also proved, that the mortgaged property had always remained in the possession of Perkins, at Schroon, both previous and subsequent to the execution of the mortgage, until May 2, 1848, when Perkins came to Bridport in the county of Addison, where the plaintiff resided, and brought the property with him for a temporary purpose; and that the next morning after the arrival of Perkins at Bridport the property was attached by the defendant, who was a deputy sheriff, upon writs

in favor of creditors of Perkins, who were citizens of this state, and was subsequently sold upon executions duly obtained in those suits. The plaintiff also gave evidence tending to prove, that when Perkins came to Bridport, with the property, he came to the plaintiff's house, and remained there that night, and that an arrangement was made between him and Perkins, that evening, by which the plaintiff was to take the property in satisfaction of the mortgage debt, and that Perkins should return home the next morning, leaving the property in the plaintiff's possession,—but that the property was taken by the defendant the next morning, before Perkins left the plaintiff's house ;—but the evidence upon the part of the defendant tended to contradict this, and to show, that the property remained, until the time of the attachment, in the possession of Perkins, with the intent, upon his part and that of the plaintiff, that he should return with it to Schroon on the morning of the attachment and retain possession of it, as before.

It being admitted, that the mortgage was *bona fide* in fact, and made to secure a just debt, the court decided, that as by the laws of New York the mortgage was valid against the creditors of Perkins, without an actual change in the possession of the property, the defendant was not justified in attaching and selling the property, although the mortgagor retained the possession and had the property in this state, for a temporary purpose, when it was attached.

Verdict for plaintiff. Exceptions by defendant.

*J. Pierpoint* and *E. J. Phelps* for defendant.

1. In the present case, whatever the plaintiff's lien might have been, under the chattel mortgage, he was not entitled to and did not have the possession of the property at the time of the attachment. 5 Vt. 97, 274, 328.   11 Vt. 587.   The evidence tending to show a change of possession under a subsequent contract is of course out of the case, since the defendant's evidence upon this point was treated as immaterial, and the decision placed solely upon the lien created by the mortgage.

2. The plaintiff acquired no lien, under the mortgage, that was valid in this state against creditors, if unaccompanied by a change of possession.   Liens of any description, acquired under the laws of one jurisdiction and invalid by the laws of another, must always give

way, in the courts of the latter, when in conflict with liens acquired there, by its citizens, under its laws. As between the parties to such a lien, it is treated as valid, and is governed by the *lex loci contractus;* but as to creditors, in the country where it is sought to be enforced, it is otherwise. For the right of priority is no part of the contract, but it is a personal privilege, dependent on the laws of the place where the right is tried, so far as the citizens of that place are concerned. The principle of comity, under which foreign laws are recognized and enforced as between the parties to contracts, never has been and never should be extended, so as to interfere with the rights of those not parties to such contracts, or affected by such laws. Story's Confl. of Laws, §§ 323–326. *Harrison* v. *Sterry et al.,* 2 U. S. Cond. R. 260. *Potter* v. *Brown,* 5 East 124. *Ingraham* v. *Geyer,* 13 Mass. 146. *Fall River Iron Co.* v. *Croad,* 15 Pick. 11. The same rule has been established in America, as to attachments made by creditors after an assignment in bankruptcy in another state, or country. *Ogden* v. *Saunders,* 6 U. S. Cond. R. 523. *Abraham* v. *Plestero,* 3 Wend. 560. 2 Kent. 408. 5 N. H. 213. And the principle has been extended to absolute sales of personal property, made abroad and valid there, when invalid by the law of the state where sought to be enforced, and in conflict with the rights or liens of its citizens. Story's Confl. of Laws, §§ 385–391. *Lanfear* v. *Sumner,* 17 Mass. 110. *Lamb* v. *Durant,* 12 Ib. 54.

*C. Linsley* and *J. A. Beckwith* for plaintiff.

1. A chattel mortgage is a sale and transfer of the property to the mortgagee, subject, however, to be defeated, if the mortgagor perform. Hence the mortgagee becomes general owner, with right of immediate possession. *Woodruff* v. *Halsey,* 8 Pick. 333. *Newall* v. *Wright,* 3 Mass. 138. 1 Smith's Lead. Cas. 298. 2 Mass. 495. But if this do not necessarily result from the very nature of the mortgage, yet in this case the instrument expressly gives the right. Ownership, with right of immediate possession, is sufficient, and trespass is therefore the proper remedy. *Edwards* v. *Edwards,* 11 Vt. 588. *Putnam* v. *Wyley,* 8 Johns. 432.

2. By the laws of New York, where the contract was made, where the mortgagor resided, and where was the *situs* of the property at

the time of making the contract, the mortgage was valid against creditors. The transfer was complete, before the property came into this state ; and it came here with all its liens. Story's Confl. of Laws 200, 324, 335. But however the rule may be in cases, where the property mortgaged is brought into the state with the intention of permanent location, comity requires, that the rule contended for should not be applied in regard to property brought into this state for temporary purposes merely. Story's Confl. 323.

The opinion of the court was delivered by

Kellogg, J. Upon the bill of exceptions two questions are raised for consideration.

1. It is insisted, that, in order to entitle the plaintiff to recover in this suit, he must have had either the *actual* or *constructive* possession of the property, at the time it was taken by the defendant. This principle is well settled and seems not to be controverted by the plaintiff. He, however, insists, that he was the owner of the property at the time of the attachment and was entitled to *immediate* possession, and that consequently he was *constructively* in possession of the property in question. This proposition rests for its support upon the mortgage deed, from which the plaintiff derives his title. The contract evidently contemplates, that the mortgagor should retain possession of the property, until there should be a failure on his part to make the payments stipulated in the deed. It, however, contains a provision, " that if the mortgagee should at any time deem himself in danger of losing his debt by delaying the collection of it until the expiration of the time limited for the payment, he was authorized to take possession of the property ; " and upon this clause the plaintiff relies, to establish his right to immediate possession. To this it is objected, that the right to possession is made to depend upon a contingency, until the happening of which, followed by some act of the mortgagee, asserting the right, the right to possession does not attach. And this objection, we think, is sustained by repeated adjudications in this court. We do not see, how it is to be distinguished, in principle, from the case of *Soper* v. *Sumner*, 5 Vt. 274. Nor could the mortgagee be justified in taking immediate possession of the property mortgaged, unless he had *reasonable* apprehension of loss by delay. *Batchelder* v. *Warren*, 19 Vt. 371. *Soper* v. *Sumner*, 5 Vt. 274.

Skiff *v.* Solace.

But it does not appear, that the plaintiff ever undertook, or ever manifested an intention, to take possession of the property prior to the attachment by the defendant. We do not see, then, how the plaintiff can be said to have been in either the *actual* or *constructive* possession of the property, at the time of the alleged trespass, and consequently, we think, the facts do not enable the plaintiff to maintain this suit.

2. It is urged by the plaintiff, that, by virtue of the mortgage, he acquired a lien upon the property, which, by the laws of New York, was valid without a change of possession; and, being valid there, he insists, that it is sufficient to defeat the defendant's attachment, made in this state. The validity of the plaintiff's lien, by the laws of New York, is conceded, and, as between the *parties to the mortgage*, it may be admitted to be valid and binding, wherever the property may be found. " Although the law does not, by its own force, operate in any other country but that which established it, and the judicial tribunals of another country are not *bound* to recognize it; yet states, from *comity* and considerations of mutual interest, recognize and give effect to the laws of each other, when the rights either of their own subjects or of foreigners are derived from or are dependent on those laws. But such recognition does not take place by any foreign state, when it would be *incompatible with its own authority*, or *prejudicial to the interests of its own subjects.*"

Admitting the validity of the mortgage in New York, it by no means follows, that it is to be received and recognized here, to defeat attachments made by our own citizens. This is not required by the comity of states. In the case at bar, the mortgagee permits the property to remain in the possession of the mortgagor, who takes it into another jurisdiction, by the laws of which the property becomes subject to attachment by the creditors of the mortgagor, and it is there attached; yet he claims, that his lien, created by the mortgage, in a foreign jurisdiction, will take precedence of and defeat the lien created by the attachment. Such is, in substance, the claim urged by the plaintiff; but we think it is not sustained by the current of authorities. *Ingraham* v. *Geyer*, 13 Mass. 146. *Potter* v. *Brown*, 5 East 124.

As between these parties, the case presents simply a question of conflicting liens. The property in question, when brought here,

became subject to our laws and liable to attachment by the creditors of the mortgagor. The defendant was not a party to the contract, under which the plaintiff claims to hold the property. As between the parties claiming by virtue of these conflicting liens, it seems to us, that the one created under our law should be sustained by the tribunals of this state. Story's Confl. of Laws, sec. 323–326.

Though the plaintiff's lien, by the laws of New York, be valid, yet we apprehend, it will hardly be pretended, that such a mortgage, made here and unaccompanied by a change of possession of the chattels, would create a valid lien, as against attaching creditors of the mortgagor. Such a doctrine is at variance with the well established rule in this state, that, to constitute a valid sale of chattels as against the creditors of the vendor, there must be an open, visible change of possession.

We are not aware, that the precise question here presented has ever been decided by this court. The case of *Woodward v. Gates*, 9 Vt. 358, involved an inquiry into the validity of a chattel mortgage, executed in New Hampshire; but the court decided the case upon the ground, that the statute of New Hampshire, regulating mortgages of personal property, had not, in that case, been complied with. The late Chief Justice WILLIAMS, however, in delivering the opinion of the court, says, " The only remaining question is, whether the statute of New Hampshire protects the property of the plaintiff against the attachment of the defendants. If the statute had been complied with, my individual opinion is, that it could not have availed the plaintiff. *The property, when in this state, was subject to attachment at the suit of the creditors of the vendor, so long as his possession remained unchanged.*" I cite the foregoing remarks of Judge WILLIAMS, not as *authority*, but as the individual opinion of an eminent judge, which is entitled to great respect, and in which opinion we fully concur.

The judgment of the county court is reversed and a new trial granted.