## SAMUEL W. COBB v. JAMES BUSWELL.

*Chattel Mortgage. Attachment. Conflict of Laws.*

A debtor of the plaintiff, while the plaintiff was living in New Hampshire, where the debtor then lived, gave the plaintiff a chattel-mortgage of the property in suit, which was valid by the laws of New Hampshire without change of possession. The debtor then brought the property into Vermont with the consent of the plaintiff, and used it for some months, having the exclusive possession of the same, when his creditors in Vermont caused it to be attached, and the plaintiff brought this action of trespass against the attaching officer. *Held,* that the plaintiff's lien by virtue of his chattel-mortgage being good by the laws of New Hampshire, was equally valid in Vermont, and the plaintiff was entitled to recover.

TRESPASS for two horses, two team harnesses, and one two horse wagon. Plea, the general issue, with notice. Trial by jury, June Term, 1864, Orleans County, POLAND, Ch. J., presiding.

The plaintiff read in evidence three mortgage deeds from Jefferson Wooster to himself, and produced the notes described therein, and proved that the same were unpaid, and that the property sued for was a part of the property described in the mortgage deeds. At the date of these deeds, the plaintiff and Jefferson Wooster were both residents of Hanover, New Hampshire, and both continued to reside there until after the taking of said property by the defendant, and the property was also in the possession of Wooster at Hanover, and so continued until the fall of 1862, when Wooster applied to the plaintiff to take said team to Barton, Vermont, to work on a railroad, and the plaintiff consented thereto. Accordingly about the 1st of September, 1862, Wooster took the team to Barton and worked with it on the railroad until April, 1863, when the same was taken by the defendant, a deputy sheriff, on writs of attachment in favor of Thomas O. May and others against Wooster, and sold on execution obtained in the suits in due form of law.

No question was made upon the proof but that all the facts hereinbefore stated as proved were true and fully proved.

The defendant also gave evidence tending to prove that Wooster, while at work on the railroad, told May and other persons of whom he wished to obtain credit, that he owned said team.

It was not claimed that any knowledge of these statements ever came to the plaintiff.

The defendant claimed that the property having been allowed by the plaintiff to be brought into this state, and kept here for so long a period by Wooster, made it subject to attachment upon his debts, especially such as were incurred here, while so having and using the property. But the court decided that upon the facts proved and conceded the plaintiff had made out a good title to recover against the defendant, and directed a verdict accordingly ;—to which the defendant excepted.

*Timothy P. Redfield*, for the defendant.

The mortgage of a chattel in another state, without change of possession, and the use and possession remaining in the vendor or mortgagor in this state as the *apparent* owner is inoperative in this state as against a creditor of the mortgagor. *Skiff* v. *Solace*, 23 Vt. 279 ; *Taylor* v. *Boardman*, 25 Vt. 581.

The registry of such a mortgage in the state of New Hampshire is not *constructive notice*, as a personal chattel has no permanent *situs.*

The registry system as to *lands* which have a fixed *situs* insure safety to every purchaser ; but not so with a personal chattel.

If the plaintiff who had a mortgage lien in his own state *suffers* the property to be removed by the general owner into this state, and to be used here by him in a permanent business for the *season*, as the ostensible owner, and where by law the creditor may attach and thus obtain a lien for his debt, he voluntarily takes upon himself the risk of such attachment. *Fletcher* v. *Howard*, 2 Aik. 117.

The question would have been the same had the debtor sold or pledged the property in this state—a mere question of priority of lien. See *Harrison* v. *Skerry*, 2 Curtis (U. S.) 267 ; *Lanfear* v. *Sumner*, 17 Mass. 112 ; *Lamb* v. *Durant*, 12 Mass. 54 ; *Wright* v. *Montgomery*, 8 Mich. 143.

*C. Robinson*, for the plaintiff.

The question as to whether a chattel mortgage executed in a neighboring state and in accordance with the laws of that state, will protect the property from attachment in this state where there has been no change of possession, in a suit against the mortgagor temporarily a resident here, has been fully discussed and decided in the case of *Jones* v. *Taylor*, 30 Vt. 42. See Story on Con. of Laws 326, 402 ; *Taylor* v. *Boardman*, 25 Vt. 581.

If Wooster claimed to May, the attaching creditor to own the team, without the knowledge or consent of the plaintiff, it could in no way affect the rights of the plaintiff under the mortgage. And the evidence tending to prove that Wooster before the taking of the property by the defendant told the said May and other persons of whom he wished to obtain credit, that he owned the team was irrelevant, excepting so far as it tended to impeach the testimony of Wooster.

PECK, J. The plaintiff claims title under three mortgages from Wooster to him. The defendant justifies the taking under writs of attachment and executions against Wooster. No question is made by the counsel for the plaintiff but that the mortgages were regularly executed and recorded according to the laws of New Hampshire, where the parties resided and where the property was then situated. Nor is any question made but that by the statute of New Hampshire the plaintiff might let the property remain in the possession and use of the mortgagor without subjecting it to attachment as the mortgagor's property. There having been no change of possession, the property would have been clearly attachable as the property of the mortgagor had the mortgagee acquired his title under our laws. The question is whether the bringing of the property into this state by the mortgagor under the circumstances stated in the exceptions, subjected it to attachment by his creditors, although not so liable under the laws of New Hampshire where the plaintiff acquired his title, and where the parties to the mortgages resided.

There is no doubt but that the right of a creditor to attach and levy upon the property of his debtor, as a general proposition, pertains to the remedy, and depends on the laws of the place where the property is found and attached. For instance, if a debtor's property of a certain kind and to a certain amount, exempt from attachment and levy by the laws of New Hampshire, is brought here, it is subject to attachment in this state, unless exempt by our laws. But whether property brought into this state by a debtor, is to be regarded as his property for the purposes of attachment and levy, or the property of a third person, is a different question. Where in cases like the present, a right is claimed to attach personal property as the property of the former owner on the ground of a non-compli-

ance with a rule of policy adopted to prevent fraud, and hold it against a purchaser or mortgagee who has acquired a title in another jurisdiction, perfect against the creditors of the vendor or mortgagor by the law of the place of the contract, where no such rule of policy prevails, more difficulty arises. The cases on this subject are not entirely harmonious. In determining which law shall govern, the domicil of the contracting parties at the time of the contract, the place of the contract and the *situs* of the property at the time of the contract, are all to be considered. It is sometimes said that personal property has no *situs*, and for some purposes it is true, or more properly, it is for some purposes immaterial; but for other purposes, and as applicable to questions of this character, the actual *situs* of the property is not to be disregarded. Much of the conflict in the decisions on this subject has arisen from the different effect different courts have given to these several considerations, where the place of the contract, the domicil of the parties to it, and the *situs* of the property have been not all in one jurisdiction at the time of the contract. But no such embarrassment arises in this case, because the domicil of the parties, the place of the contract and the *situs* of the property were all in New Hampshire when the mortgages were executed. The only thing that raises any question is the removal of the property into this state where a rule of policy prevails requiring a change of possession. The law of one state cannot by its own force operate in another state, but we can look at the laws of another state to see what rights a party has acquired under them. If the immunity from attachment at the suit of the creditors of Wooster in respect to this property, is a part of the contract, then it is clear that the defendant's attachment must give way to the plaintiff's title. But if this rule requiring or dispensing with a change of possession, is a mere rule of local policy by which a duty may or may not be super-added to the contract, and imposed upon the purchaser to take possession in order to protect the property from attachment, then our laws may apply if sound policy requires that it should be extended to cases like the present.

One ground on which it is urged by the defendant's counsel that our law ought to apply to this case is, that the attaching creditor is a citizen of this state. It is true we are not always bound to give

Cobb *v*. Buswell.

effect to a foreign law in a given class of cases, if by doing so it would be so far detrimental to our citizens generally as to contravene the general policy of the state ; but it is immaterial whether in the particular case a citizen of our own state is a party, as the same rule ought to be applied to citizens of other states as to our own. It has been sometimes supposed that *Skiff* v. *Solace*, 23 Vt. 279, was decided partly on the ground that the attaching creditor was a citizen of this state ; and there is an expression in the opinion given in that case that favors the idea of giving some peculiar protection to our own citizens. But it cannot be supposed that that was a controlling consideration in that decision, since the case shows that the mortgagee was also a citizen of this state. But however that may be, the idea of such preference in favor of our own citizens has been expressly repudiated in several later cases. *Taylor* v. *Boardman*, 25 Vt. 581 ; *Jones* v. *Taylor*, 30 Vt. 42. The plaintiff in this case cannot be deprived of any rights that he would otherwise have, from the fact that the defendant and the attaching creditor under whom he justifies, are citizens of this state, even if the attaching creditor is a citizen of this state as is claimed by the defendant's counsel.

On the other hand the decisions in this state settle the principle that this immunity from attachment is no part of the contract. This is expressly recognized and directly involved in *Rice & Danenbaum* v. *Courtis*, 32 Vt. 460. That case and *Hanford* v. *Paine & Trustee*, 32 Vt. 443, were argued and decided at the same term. In *Hanford* v. *Paine & Trustee* the decision was that a general assignment of personal property made in New York, where the parties to the contract resided, executed according to the laws of the state of New York, was valid and operative against a subsequent attachment here, even in relation to property permanently situated and invested in business in this state at the time of the assignment, although there was no compliance with our statute relating to such assignments. The court held that the assignment being valid in that state, was equally valid here to pass property situate here. The court held as matter of construction that our statute regulating assignments only applied to assignments made here, or by parties having their domicil here at the time. In that case no question arose as to change of possession, as the assignee had taken possession just before the attachment or trus-

tee process was served. But in the other case, *Rice & Danenbaum* v. *Courtis*, which was like the other, except there had been no change of possession, the attaching creditor held the property against the title under the prior assignment. The court distinguished the two cases upon the ground that the requirement of a change of possession was no part of the contract, but a rule of local policy applicable to all property situate in this state at the time of the sale or transfer.

The question then arises, not whether the law of New Hampshire shall operate here, but whether our local rule of policy requiring a change of possession, shall be extended to transfers made in another state where the parties to the contract resided, and where the property was located at the time of the transfer, to defeat a title perfect by the laws of that state not only against the former owner, but against his creditors. To show that it does apply to such case the defendant's counsel refers to *Skiff* v. *Solace*, 23 Vt. 279. If that case is to be now regarded as law, to the extent indicated by the decision, it would seem to be decisive of this case for the defendant. But that case was questioned, if not in effect overruled, in *Taylor* v. *Boardman*, 25 Vt. In *Taylor* v. *Boardman*, at the time the mortgage was executed, two of the mortgagors and the mortgagee resided in Massachusetts, and the other mortgagor resided in this state, the mortgage was executed in Massachusetts where the law required no change of possession, the property was there situated, the mortgage was afterwards foreclosed in Massachusetts. Afterwards the mortgagor, without the consent of the mortgagee, brought the property into this state and sold it to the defendant who bought it for a valuable consideration without notice of any defect of title in the mortgagor. The court held that the defendant acquired no title against the title of the mortgagee. The court in the opinion alluded to some particulars in which the case differed from *Skiff* v. *Solace*, but it is evident that they considered that the two cases could hardly stand consistently with each other. *Jones* v. *Taylor*, 30 Vt. 42, decides that a chattel mortgage executed in New York by a citizen of that state where the property had its visible locality at the time of the execution of the mortgage, and valid against creditors by the laws of New York without a change of possession, will protect the property from attachment in this state at the suit of a creditor of the mort-

gagor resident here, though found here in the possession of the mort-gagor. In deciding that case the court say that *Skiff* v. *Solace* has no sound basis upon which it can stand. It is treated as overruled. These two later cases we are disposed to adhere to, and they are de-cisive against the right of the attaching creditor in this case unless the distinction between those cases and the present one, relied on by the defendant's counsel, requires the application of a different prin-ciple. It is insisted that as the property in this case was brought into this state by the consent of the mortgagee, to remain and be used here by the mortgagor, if not permanently, yet for a considerable time, a different rule should govern the case.

It is true that in *Taylor* v. *Boardman* the case shows that the property was brought into this state without the knowledge or con-sent of the mortgagee, and in *Jones* v. *Taylor* the case is silent on this subject, and does not show by what means or by whose procure-ment the property was brought into this state, or how long it had remained here. But the principle decided in those cases is, that the rule of policy requiring a change of possession, applies to transfers made within this state, and to transfers of property situate in this state at the time of the transfer, and not to sales or mortgages like this, perfect by the laws of the place where made.

If this rule requiring a change of possession does not apply to such sales made out of the state, as held in these cases, it is immaterial at whose instance, or by whose consent, or for what purpose the property was afterwards brought into the state, or how long it had remained here after the sale or mortgage before the attachment. As Wooster never owned the property, absolutely in this state, and made no transfer of it here, no change of possession was necessary here to perfect the title against creditors, which was already complete by the laws of New Hampshire. It is evident that the court in *Rice* & *Danenbaum*, where they hold that a change of possession is necessary under a sale made abroad, if the property has its locality here at the time of the sale, did not intend to extend the sale further. This ap-pears from the whole reasoning of the case ; and in conclusion the court say, " it is true that out of comity we do not apply it *so as to* defeat rights acquired in other states as to property having its locality there. This would be to work fraud and injustice, and

offensively to divest rights acquired *bona fide* under the laws of a foreign state." The phrase, " having its locality there," must have reference to the time of the sale.

It is insisted that unless a change of possession is required in cases like this, that creditors may be misled, and that in this case the creditor was misled, by the possession remaining in the mortgagor, and by his representing the property as his. This may be true in some cases, but there are many cases where the same may be true and yet the apparent ownership yields to the actual title ; as in cases where property was never owned but hired, by the one in possession, and cases of sheriffs' sales and conditional sales, where no change of possession is requisite.

The defendant's counsel refers to *Montgomery* v. *Wright*, 8 Mich. 143. That case differs somewhat from this. The case arose between a mortgagee under a mortgage executed in Canada, and an attaching creditor under a subsequent attachment in Michigan. The plaintiff resided in Michigan and owned and was in possession of the horse in question at Detroit. He afterwards removed into Canada and took the horse with him, and soon after executed the mortgage in Canada, under a statute similar to the New Hampshire statute. Afterwards, having resided in Canada about a year, he brought the horse to Detroit to be trained, and after the horse had been there about a month and a half, he was attached as the property of the mortgagor. I do not say that the fact that the mortgagor had previous to the mortgage, and so recently, been the absolute and notorious owner of the property in Michigan, accompanied by possession while he resided there, ought of itself to distinguish the case in principle from this, but it furnishes an argument, if not a sufficient reason, for requiring a change of possession in that case, that does not exist in this. But what is of more importance, the Canada statute required the mortgage to contain a particular description of the property, and the court decided on the authority of decisions of the Canadian courts, that the mortgage was void by the law of Canada as against creditors for want of a more particular description of the property. That point they held was decisive of the case. The court go on however and express an opinion that the attachment would still prevail if the mortgage had been valid by the

laws of Canada. The court refer to no authorities on this point, but the counsel for the attaching creditor cited *Skiff* v. *Solace*, 23 Vt. The later cases in this state on the subject were not referred to in that case. The case has much less weight than it would'be entitled to, had the court held the mortgage executed in Canada, valid by the laws of Canada, so as necessarily to have presented the question, whether the law of Canada, or the law of Michigan, should govern the rights of the parties. But aside from this view of that case, we are disposed to adhere to the principles established by our own decisions made since the case of *Skiff* v. *Solace*.

Judgment affirmed.