Rosenbaum v. Dawes.

| 77 | 295 |
| 179s | 112 |
| 77 | 295 |
| 113 | 62 |

## Morris Rosenbaum et al. v. E. G. Dawes, Trustee, for use of Farmers' Savings Bank.

1. CHATTEL MORTGAGES—*Possession of the Mortgaged Property—Sale by Mortgagor—Mortgagee's Remedy.*—When, by the terms of a chattel mortgage, the mortgagor is entitled to the possession of the mortgaged property until default is made in the payment of the mortgaged debt, until such default the mortgagee has neither the right of property nor the right of possession, and until then the mortgagor may sell the property, but the purchaser will take only the mortgagor's interest. The

remedy of the mortgagee is to follow the lien of his mortgage in the hands of the vendee.

2. Same—*Acknowledgment and Record in Other States—Constructive Notice to Citizens of This State.*—The constructive notice of a mortgage resulting from its acknowledgment and recording in the State in which it is executed, is also constructive notice in our State, and to its citizens, when the mortgaged property is removed to this State.

3. Same—*Rule Making Acknowledgment and Record in Other States Constructive Notice to Citizens in This State, Criticised.*—The courts base this rule on the doctrine of interstate comity, but it seems to this court that the doctrine should not be extended to the detriment of citizens of this State. In many cases the rule that citizens of this State are bound by constructive notice of a chattel mortgage executed and recorded in another State, necessarily and inevitably operates to the detriment of such citizens.

4. Demand -*Must Be Made on the Defendant While the Property Is in His Possession.*—The demand in replevin must be made on the defendant while the property is in his possession. His ability to comply with it is necessary to give the demand force and effect.

5. Same—*Demand and Refusal Do Not Make a Conversion.*—A demand and refusal do not constitute a conversion; they are, at the most, but evidence of a conversion.

Trover.—Trial in the Superior Court of Cook County; the Hon. John Barton Payne, Judge, presiding. Finding and judgment for plaintiff. Appeal by the defendant. Heard in this court at the October term, 1897. Reversed. Opinion filed June 29, 1898.

Moran, Kraus & Mayer, attorneys for appellants.

In an action of trover, the plaintiff must show not only a tortious conversion of the personal property by the defendant, but also, that at the time of the alleged conversion, plaintiff had the right of property, general or special, in the chattels converted, and also the possession, or a right to the immediate possession thereof. Davidson v. Waldron, 31 Ill. 120–129; Forth v. Pursley, 82 Ill. 152–154; Owens v. Weedman, 82 Ill. 409–417; Montgomery v. Brush, 121 Ill. 513–523; Frink v. Pratt, 130 Ill. 328–331; Stock Yard Co. v. Mallory, 157 Ill. 554–561; Lapp v. Pinover, 27 Ill. App. 169–171; Parker v. Rodes, 79 Mo. 91; Blain v. Foster, 33 Ill. App. 297–298; Dunning v. Fitch, 66 Ill. 51.

Under the law of Missouri, until default or condition broken, a trustee or mortgagee has no right of either pos-

Rosenbaum v. Dawes.

session or ownership in the mortgaged property, and the mortgagor, until such default and condition broken, has an interest in the property which he can transfer by sale. Barnett v. Timberlake, 57 Mo. 499–501; Hickman v. Dill, 32 Mo. App. 509–516–17; Buddington v. Mastbrook, 17 Mo. App. 577–579; Sheble v. Curdt, 56 Mo. 437–439; see also Holladay v. Bartholomae, 11 Ill. App. 208.

While personal property remains in the possession of the mortgagor, and there is no condition of the mortgage broken, the mortgagor's interest being subject to levy and sale, a purchaser obtains a title which he can lawfully sell, and no claim arises against him in favor of the mortgagee by reason of such sale. Hathaway v. Brayman, 42 N. Y. 322–324; Hamill v. Gillespie, 48 N. Y. 556–8; Bowers v. Bodley, 4 Ill. App. 279–281.

Demand and refusal are, at most, evidence of a conversion; but in order to have even that effect, it must appear that the thing demanded is in the possession of the party upon whom the demand is made, at the time of making such demand. Dearborn v. Un. Nat. Bk., 58 Me. 273–4; Hawkins v. Hoffman, 6 Hill, 588; Frome v. Dennis, 45 N. J. Law, 515–520; Haddix v. Einstman, 14 Ill. App. 445; Kime v. Dale, 14 Ill. App. 308; Howitt v. Estelle, 92 Ill. 218; Hayes v. Mass. Life Ins. Co., 125 Ill. 626; Bruner v. Dyball, 42 Ill. 34; Hanchett v. Williams, 24 Ill. App. 57.

John Mayo Palmer, Robertson Palmer and Rice & McClanahan, attorneys for appellee.

By a chattel mortgage the property is conditionally conveyed to the mortgagee, and is only in the permissive possession of the mortgagor, which the mortgagee may terminate for condition broken; and whoever derives possession of the property from the mortgagor while the mortgage is in force, whether before or after condition broken, does no more than succeed to the rights of the mortgagor, and holds such possession in subordination to the rights of the mortgagee. The mortgagee, therefore, has all the remedies against such person for the recovery of the specific property, or its value, as he would have had against

the mortgagor. Bailey v. Godfrey, 54 Ill. 507; Arnold v. Stock, 81 Ill. 407; Pike v. Colvin, 67 Ill. 227; Durfee v. Grinnell, 69 Ill. 371; Beach v. Derby, 19 Ill. 617; Simmons v. Jenkins, 76 Ill. 479; Close v. Hodges, 44 Minn. 204; Shepard v. Barnes, 3 Dak. 148; Brewing Co. v. Pillsbury, 5 Dak. 62; National Bank v. Morris, 114 Mo. 255; National Bank v. Morris, 125 Mo. 343; Udell v. Slocum, 56 Ill. App. 216; Cassidy v. Elk Grove Land Co., 58 Ill. App. 39; Frink v. Pratt, 130 Ill. 332.

The general title to mortgaged property is in the mortgagee; he is entitled to immediate possession of the property to hold it until condition broken, unless the parties otherwise stipulated in the mortgage; without such agreement, the possession of the mortgagor (if suffered to retain the property) is deemed the possession of the mortgagee, so that he may reduce the property to possession at any moment, and may maintain a trespass, trover or replevin, as the case may be, for any intermeddling with or taking of the property by a third party while in the possession of the mortgagor, equally as though the actual possession was in himself. Tannahill v. Tuttle, 61 Am. Dec. 480.

The application of the mortgaged chattels to the payment of a debt other than that secured by the mortgage, was such a violation of the rights of the mortgagee, as amounted to tortious conversion by the mortgagor; and the appellants by aiding him in the commission of this tort are equally guilty with him of a conversion. Cooley on Torts, 450, and cases cited.

The action of trover lies in favor of one entitled to the possession of personal property at the time the suit is brought to recover the value of such property from one who has converted it to his own use in derogation of the rights of one thus entitled to possession. And the right to maintain the action is not in any way affected by the circumstance that the defendant is not in possession at the time demand is made or suit brought. Sharp v. Parks, 48 Ill. 511; Udell v. Slocum, 56 Ill. App. 216; Cassidy v. Elk Grove Land Co., 58 Ill. App. 39.

One who has come lawfully into the possession of per-

Rosenbaum v. Dawes.

sonal property, but has parted with such possession to another, can not escape liability in an action of trover, unless upon demand made he then places his refusal upon that ground.   Udell v. Slocum, 56 Ill. App. 216; Cassidy v. Elk Grove Land Co., 58 Ill. App. 39.

Where a mortgagor, before condition broken, transfers the possession of mortgaged chattels to another, the possession of such other being rightful when acquired, a demand for possession by the mortgagee is necessary after his right of possession accrues as an assertion of his right; and a refusal to recognize that right is a conversion as against him, and not mere evidence of conversion.

Mr. Presiding Justice Adams delivered the opinion of the court.

This is an appeal from a judgment rendered in an action of trover by appellee against the appellants, Morris Rosenbaum, Joseph Rosenbaum, Charles Haas and Henry Klopfer, partners under the firm name of Rosenbaum Bros. & Co. The declaration contains one count in trover, in the usual form, for 200 head of cattle of the value of $3,000. Appellants pleaded the general issue, and the cause, by agreement of the parties, was tried by the court, without a jury. The court found the issues for appellee and rendered judgment for appellee for $1,709.78 and costs.

December 24, 1892, C. D. Hudson executed to the Farmers' Savings Bank, in Marshall, in the State of Missouri, a promissory note which, with the indorsements thereon, is as follows:

15831.               "Marshall, Mo., December 24, 1892.

Eight months after date I promise to pay to the order of Farmers' Savings Bank eight thousand dollars, for value received.   Negotiable and payable at the Farmers' Savings Bank, in Marshall, Mo., with interest from maturity at the rate of eight per cent per annum until paid, and if interest be not paid annually, it shall become part of the principal and bear the same rate of interest.

Due Aug. 24–93.                         C. D. Hudson.
   $8,000.00."

Indorsed on the back:

"Protest waived.          .    JAS. S. GORDON, Pr.

This note is allowed against estate of C. D. Hudson for the sum of twenty-two hundred and fifty-four dollars and seventy cents ($2,254.70).

JAMES COONEY,<br>Assignee of C. D. Hudson.

Credited this 26th March, 1894, with distribution by assignee of $157.82, being 7 per cent.

Credited March 15–95, with distribution by assignee $25.15."

To secure payment of the note Hudson, at the same date, executed to appellee a chattel mortgage, in the form of a trust deed, of 150 head of two and three-year old native feeding steers, then on Hudson's farm near Mt. Leonard, Saline county, Missouri, which were, by the trust deed, warranted to be free and clear of incumbrances.

Dawes, the appellee, was named as the second party in the trust deed, and the Farmers' Savings Bank as the third party. The deed contained substantially the following provisions:

"Whereas, said Hudson is justly indebted to said bank as per said note of December 24, 1892, and agrees to pay taxes and properly feed and care for said steers as said bank cashier may determine; now, if said note and interest be paid when due and payable, deed shall be void and property released; but if default be made in payment of said note and interest when due, or failure to properly feed and care for said steers as said cashier may determine, then the legal holder of said note may at once declare the same due and sale at his option be had forthwith; or in the faithful performance of said agreement this deed shall remain in force, and second party (or in case of death, and a sale be desired by holder of note, the sheriff) may sell at public vendue to highest bidder, upon giving notice; and out of the proceeds shall pay costs and expenses of this trust and whatever may be in arrear and unpaid on note, remainder to first party."

By the statute of the State of Missouri, put in evidence

by appellee, it is lawful for the mortgagor or grantor in a deed of trust of personal property to retain possession of the property, if the instrument has been acknowledged or proved, and recorded in the county in which the grantor or mortgagor resides. The statute does not require that the instrument shall, in terms, provide that the mortgagor or grantor may retain possession. That the trust deed in question was properly acknowledged and recorded, is not controverted. August 2, 1893, Hudson, the grantor in the trust deed, being in possession of the cattle, shipped to Chicago to appellants, who were and are commission men engaged in selling cattle in the Chicago market, thirty-one head of cattle, thirty of which were cattle described in the deed of trust, one of which was a stag, not included in the deed. Prior to the last date Hudson had made two shipments to the appellants of cattle included in the trust deed, viz., twenty-two head shipped July 16, 1893, and forty-five head shipped July 25 or 26, 1893. Appellants sold and accounted to Hudson for the July shipments, and Hudson testified that they sold for about $3,530. There is no controversy between the parties as to the July shipments, the controversy being solely as to the August, 1893, shipment. Appellant sold the August shipment, thirty-one head, August 3, 1893, and rendered an account of the sale to Hudson, showing the net proceeds to be $1,502.08.

The parties, on the trial, stipulated as follows:

"First. That the following may be considered as facts in this case; that on August 3, 1893, the defendants received from the mortgagor, Hudson, the cattle in controversy in this suit, and that at that time neither any of the defendants, nor any of their agents, had any notice or knowledge as to the existence of the trust deed in evidence, or any other mortgage or lien upon any of the property here in controversy, other than that imputed to them by law on account of the recording of said deed of trust in Missouri; that on said August 3, 1893, the defendants in good faith sold the cattle here in controversy in open market to Nelson Morris & Co., then and still engaged in business in Chicago, Illinois, as

packers and feeders, buyers, sellers and dealers in cattle, for the sum of money shown on the sales account in evidence; and that it was never disclosed to the plaintiff or to the bank, to whom the cattle were disposed of by the defendants; that thereafter and on the same date they credited the proceeds of said sale to their account with Hudson, and that at the said time Hudson was and since then has continuously remained indebted to the defendants in a sum largely in excess of the amount received by the defendants on the sale of the cattle, so that after crediting said proceeds, Hudson still remained, and continuously since has remained indebted to the defendants; that on August 3, 1893, the defendants were and for years theretofore had been engaged in the business of selling cattle in Chicago as commission merchants; that they were acting as such commission merchants in selling the cattle in question," etc.

The president of the bank, James A. Gordon, testified that $5,774.44 had been paid on the note, and that part of said payments consisted of a draft on appellants for $3,500, which was deposited in the bank July 29, 1893, credited to Hudson, and applied on the note August 24, 1893, when the note matured. The same witness testified that he knew that Hudson had been in the habit of shipping cattle to Rosenbaum Bros. & Co., and that they were in the live stock commission business. It is a fair inference that the $3,500 draft on appellants was drawn against the proceeds of the July shipments to appellants.

About the first part of October, 1893, Abiel Leonard, a director of the Farmers' Savings Bank, came to Chicago with a letter of introduction to appellants from Mr. Gordon, the president of the bank, and called on appellant Joseph Rosenbaum, and told him that he came to demand the cattle that the bank had a mortgage on, and which had been shipped by Hudson, and that Rosenbaum became angry and refused to discuss the matter with him. Leonard testified that before he left Missouri to come to Chicago, and when he made the demand for the cattle, he knew they had been shipped by Hudson to appellants and sold by ap-

pellants, and that appellants had, in some way, accounted to Hudson for the proceeds of the sale. Prior to the 29th of July, 1893, the Farmers' Savings Bank discounted Hudson's note, which the trust deed was made to secure, in the Commercial Bank of St. Louis, and from the time it was so discounted until it matured, August 24, 1893, it was the property of the last named bank. Counsel agree that the rights of the parties depend on the law of the State of Missouri where the trust deed was executed, and counsel for appellee read in evidence the opinions of the following cases: National Bank of Commerce v. Morris, 114 Mo. 225; Lafayette Bank v. Metcalf, 40 Mo. App. 494; Same v. Same, 29 Mo. App. 384; and counsel for appellants read in evidence the opinions in the following cases: Hickman v. Dill, 32 Mo. App. 516; Turner v. Langdon, 85 Mo. 441; Barnett v. Timberlake, 57 Mo. 500, and the case in 29 Missouri, *supra.*

The trust deed contains no insecurity clause; that is, no provision that if the trustee or the bank should, at any time, feel insecure, possession might be taken of the property by the trustee or the bank. Only two cases in which such possession could be taken are provided for; one, if default should be made in payment of the note and interest when due; the other, failure to properly feed and care for the steers as the cashier of the bank might determine. The first contingency did not occur until August 24, 1893, twenty-one days after appellants had sold the cattle, and there is no claim that the second ever occurred. Was the sale of the cattle by appellants a conversion?

The facts in Lafayette Co. Bank v. Metcalf, 29 Mo. App. 384, read in evidence by appellee's counsel, were very similar to those in the present case. The mortgagors in that case executed to the bank a chattel mortgage of a lot of cattle and hogs, to secure the payment of their note to the bank for $2,000, due six months after date. About a month before the maturity of the note, the mortgagors shipped the cattle to commission merchants in East St. Louis, in the State of Illinois, for sale, and the commission merchants sold them and accounted to the mortgagors for the pro-

ceeds of the sale. The action was against the commission merchants, and was, as the court say, in the nature of trover. The court say : " It is conceded that, at the time of the alleged conversion, the draft, or any part thereof, was not due. The possession then, at the time of the alleged conversion, by the very letter of the bond, was in the mortgagors. No rule of law is better settled than that the mortgagors, under such circumstances, have the title to the property, and having the possession they have an interest which they may sell, and may transfer the possession to the vendor. It is an interest which may be seized under process at the suit of another creditor of the mortgagor, and sold, and the purchaser will take the possessory right and the title of the mortgagor, subject, of course, to the lien of the mortgage," citing cases. In the case cited there was an express provision in the mortgage that the property should remain in the possession of the mortgagor until default in payment of debt and interest. But, as before stated, the statute of Missouri put in evidence by appellee, does not require that the mortgage shall contain such provision. The only section of the statute in evidence bearing on the question is as follows :

"No mortgage or deed of trust of personal property hereafter made, shall be valid against any other person than the parties thereto, unless possession of the mortgaged or trust property be delivered to and retained by the mortgagee or trustee, or *cestui que trust*, or unless the mortgage or deed of trust be acknowledged or proved and recorded in the county in which the mortgagor or grantor resides, in such manner as conveyances of lands are by law directed to be acknowledged or proved and recorded."

The trust deed in question, being of cattle on the grantor's farm, and he being required to properly feed and care for the cattle, we are of opinion that the trust deed provides, by necessary implication, that he shall remain in possession.

Hickman v. Dill, 32 Mo. App. 509, was replevin for wheat which had been mortgaged to secure payment of a promis-

sory note. There was no provision in the mortgage for the retention by the mortgagor of possession of the property, until default in the payment of the debt, no insecurity clause, and no provision for the taking possession by the mortgagee, except on default in payment of the note. Plaintiff, before the maturity of the note, brought replevin. The court say: "The weight of authority in the United States seems to maintain that the right to possession of mortgaged chattels rests in the mortgagee immediately upon the execution of the mortgage, if there be no express or implied stipulation in it to the contrary, whether the debt be due and payable or not. Jones on Chat. Mort., Sec. 426, and cases cited. Yet the decisions in this State hold that a trustee or mortgagee is not entitled to possession until after default made or condition broken," citing Shelbe v. Curdt, 56 Mo. 437, and Barnett v. Timberlake, 57 Mo. 499. The court, after holding, as in Lafayette Co. Bank v. Metcalf, *supra*, that a mortgagor in possession has an interest which he may sell, and which is subject to sale under legal process, say: "Under the law as thus established in this State, we must hold that, as the debt secured by the deed of trust was not due, and no forfeiture had occurred at the time the plaintiff instituted his suit, as against the mortgagor or his assignee, the plaintiff was not entitled to the immediate possession of the wheat, and could not reap a perfect success in his action of replevin."

In Barnett v. Timberlake, 57 Mo. 499, the plaintiff sued out legal process, and took from the defendant, property described in a trust deed, executed by the defendant to the plaintiff, to secure payment of a promissory note which had not yet matured. The court held that the plaintiff could not recover, saying: "The law is well settled, that, although a trustee or mortgagee of personal property is, after default made or condition broken, entitled to the possession, and considered in law the owner of the property thus mortgaged, yet, prior to that time, it is equally certain that no such right of either possession or ownership exists."

In each of the cases, Lafayette Co. Bank v. Metcalf et

al., 40 Mo. App. 424, and Nat. Bank of Commerce v. Morris, 114 Mo. 258, both of which cases are relied on by appellee's counsel, there was a provision in the mortgage entitling the mortgagee to immediate possession in case the mortgagor should sell or remove, or attempt to sell or remove the mortgaged property, and the cases, in that respect, are clearly distinguishable from prior Missouri cases, in which the mortgages contained no provision for possession by the mortgagee, except on default in the payment of the debt secured, and in which the court held that, until such default, the mortgagor and not the mortgagee was entitled to possession. In the case in 114 Mo. *supra*, the court uses this language : " Authorities of high character, including those cited by counsel for defendants, hold that until such option is exercised by the mortgagee, and he either so takes or demands the possession, the possession remains with the mortgagor until default made in the payment of the debt, and that a sale made by him before such default or assertion of right, will not support trover against the vendee or agent making the sale. Bank v. Metcalf, 29 Mo. App. 392; Skiff v. Solace, 23 Vt. 279; Hathaway v. Brayman, 42 N. Y. 325; Hammill v. Gillespie, 48 N. Y. 556; Cadwell v. Pray, 41 Mich. 307." And the court decided the case for the plaintiff (Ib. 265) on the express ground that a removal and sale of the property was contrary to the terms of the mortgage. We have examined the Vermont, New York and Michigan cases cited, *supra*, in the opinion of the Missouri court, *supra*, and find that they fully sustain the language above quoted from the opinion. In Hammill v. Gillespie, 48 N. Y. 556, the court say of mortgaged property which had been sold under an execution against the mortgagor : " It was not material to inquire how much the defendant obtained for the wheat and oats. He bought only the interest of Markle (the mortgagor), whatever that might be, subject to the mortgage. He could lawfully sell that interest again. Whether he received much or little, is of no consequence to the plaintiff. If he sold the whole title, he might be liable to the purchaser in case the grain

Rosenbaum v. Dawes.

should be afterward taken from him under the mortgage, but that would be a question in which the plaintiff would have no concern." In the same case, the court held that no wrong was done to the plaintiff, the mortgagee, by the sale; that he still might pursue his lien under the mortgage. In Durfee v. Grinnell, 69 Ill. 371, the court, p. 373, say : " Had there been no provision in the mortgage allowing the mortgagees to reduce the property to possession, and the mortgage, by its terms, had authorized the mortgagor to hold the property until the maturity of the notes, then the interest of the mortgagor could have been seized and sold under execution, at any time before the debts fell due, and the purchaser would have succeeded to all of the rights, but no more than the debtor held in the property, nor would the mortgagees have had any power to prevent the sale. The law authorizes a sale in such a case in despite of the creditor," etc. The language of the court in the above quotation, namely, " and the mortgage, by its terms, had authorized the mortgagor to hold the property until the maturity of the notes," is used with reference to the statute of this State, which, in terms, requires that " the instrument shall provide for the possession of the property to remain with the grantor." But we have already shown that the Missouri statute in evidence does not so require, and the Missouri Court of Appeals, in Hickman v. Dill, cited *supra*, expressly held that such a provision in the mortgage is not necessary to the retention of possession by the mortgagor, and, in our opinion, this is a correct construction of the Missouri statute in evidence. Simmons v. Jenkins, 76 Ill. 479, is to the same effect as Durfee v. Grinnell, *supra.*

The rule deducible from the authorities cited is that when, by the mortgage, the mortgagor is entitled to the possession of the mortgaged property until default in the payment of the secured debt, the mortgagee has not, before such default, either the right of property or of possession; and, until such time, the mortgagor may sell, the purchaser taking only his (the mortgagor's) interest, and the remedy of the mortgagee is to follow the lien of his mortgage in

the hands of the vendee. At the time of the sale in question, the note secured by the mortgage had not matured; there had been no default on the part of the mortgagor; he had lawful right to sell, therefore the sale was not a conversion. But, even though it should be conceded that the sale was a conversion, appellee could not recover in trover, because, at the time of the sale, August 3, 1893, neither appellee nor the Farmers' Savings Bank had any right of property, general or special, in the mortgaged property, or any right to the possession of it. In Stock Yards Co. v. Mallory, etc., Co., 157 Ill. 560, the court say: "In an action of trover, which is a possessory action, the plaintiff must recover upon the strength of his own title and not upon the weakness of his adversary's title; and he must show not only a tortious conversion of the personal property by the defendant, but also that, at the time of the alleged conversion, he had the right of property, general or special, in the chattels converted, and also the possession or the right to the immediate possession thereof," citing a number of prior decisions of the Supreme Court.

But appellee's counsel contend that the failure of appellants to deliver the cattle on demand made by Abiel Leonard on Joseph Rosenbaum, was a conversion. "The demand must be made on the defendant while the property is in his possession. His ability to comply with the demand is necessary to give the demand force and effect." Cobbey on Replevin, Sec. 476; Cooley on Torts, 2d Ed., Sec. 454, top p. 532; Wells on Replevin, Sec. 375; Davis v. Buffum, 51 Me. 160; Dearbaurn v. Un. Nat. Bank, 58 Ib. 274; Hill v. Belasco, 17 Ill. App. 194.

The demand was made in October, 1893; the cattle had been sold the previous August, and both Leonard, who made the demand, and the Farmers' Savings Bank, knew that appellants had sold the cattle, and had ceased to have any control over them. But appellee's counsel contend that because Rosenbaum did not place his omission or failure to deliver the property on the ground that appellants had sold it, therefore his failure to deliver was a conversion; citing

Udell v. Slocum, 56 Ill. App. 216, and Cassidy v. E. G.
Land Co., 58 Id. 43. In the former case the court say of a
refusal to deliver on demand : " If the refusal to surrender
was upon the ground that he had parted with the possession,
he should have put it on that ground, so that the plaintiff
might learn where to seek the property," etc.   In the latter
case the owners of stolen cattle applied to commission men
who had sold them for information as to who the pur-
chasers were. Neither case is applicable to the present
case. Leonard, who made the demand, knew that the cat-
tle had been sold, and he did not ask to whom they had
been sold.

A demand and refusal do not constitute a conversion;
they are, at the most, but evidence of a conversion.   Cooley
on Torts, Sec. 454; Cobbey on Replevin, Sec. 449; Wells on
Replevin, Sec. 349; Hill v. Belasco, *supra.*

How the demand and alleged refusal could be held to be
evidence of a conversion in the present case, in which, as
we have shown, what was done prior to the demand was
not a conversion, we can not perceive.   In view of what
has been said, we do not deem it necessary to pass specific-
ally upon the errors assigned in relation to propositions
of law held and refused.   We can not conclude this opinion,
however, without some suggestions as to the rule, appar-
ently supported by numerous adjudications, that the con-
structive notice of a mortgage resulting from its acknowl-
edgment and recording in the State in which it is executed,
is also constructive notice in other States, and to the citizens
of other States to which the mortgaged property may be
removed, thus giving to the law of the State in which the
mortgage is executed extra-territorial effect.   The courts
base this rule on the doctrine of interstate comity, but it
seems to us that the doctrine should not be extended to the
detriment of citizens of the State.   In many cases the rule
that citizens of this State are bound by constructive notice
of a chattel mortgage executed and recorded in another
State, necessarily and inevitably operates to the detriment
of such citizens.

Chicago is one of the largest cattle markets in the world. In the case of the shipment of mortgaged cattle here for sale by commission men or brokers in open market, there is absolutely no protection for purchasers. If the prospective purchaser applies to the broker for information as to whether the cattle are incumbered, he can get none, because the brokers, like appellants in the present case, are ignorant of incumbrances. If he asks the shipper's name and residence, he finds that he lives in Texas or North Dakota, and if he can afford to wait and communicate with him, he will probably receive no information on the subject. He can not afford to visit the State and county from which the cattle were shipped to inspect the record. He is a farmer, and, taking the chances, buys the cattle in open market for the full market price, and takes them to his farm in Mc-Lean county to fatten them for remarketing—a thing of common occurrence. He feeds them for three or four months, when along comes the mortgagee with his mortgage, identifies and demands the cattle, and the farmer must either pay the mortgage debt or give up the cattle. Is it not a serious question whether interstate comity should be extended when its extension may lead to such consequences? In Skiff v. Solace, 23 Vt. 279, mortgaged property was removed from New York to Vermont, and attached in the latter State by a citizen of Vermont, and the court sustained, as against the mortgagee, the lien of the attaching creditor. In reference to recognizing the law of New York by comity, the court say: "But such recognition does not take place by any foreign State when it would be incompatible with its own authority, or prejudicial to the interest of its own subject." See also, Story on Conflict of Laws, Sec. 32, *et seq.*

The judgment will be reversed.