## CLEVELAND MACHINE WORKS *v.* LANG.

A sale and delivery of personal property in Massachusetts between citizens
of that state, conditional to remain the property of the vendor until paid
for, is not, when the property is brought to New Hampshire, within the
provisions of chapter 30, Laws of 1885, which requires a memorandum
and record of the lien, although it was understood that it was to be taken
to New Hampshire when the property was purchased.

REPLEVIN, for two machines, hereinafter described, situate in
the Granite Mills in Northfield, and attached as both real and per-
sonal estate by the defendant, a deputy sheriff, on a writ in favor
of Denny, Rice & Co. against Edward P. Parsons. Plea, the gen-
eral issue, and a brief statement that the machines were the prop-
erty of said Parsons, and that they had become annexed to the
Granite Mills and liable to attachment as part of the realty. Facts
found by the court.

The negotiations for the machines were had and completed with
the plaintiffs at their place of business in Worcester, Mass., by
one Green, as agent for Parsons who resided in Boston. Aside
from the agreement of the plaintiffs to send one of their employés

to Northfield to set up the machines, which they did, the terms of the contract were as follows:

"TILTON, N. H., Oct. 14, 1890.

"Borrowed and received of Cleveland Machine Works, Worcester, Mass., the following machinery. If the price set against them is paid as per memorandum below, the property is then to belong to Edward P. Parsons, otherwise it remains the property of the said Cleveland Machine Works. Notes and drafts, if given, are not to be considered as payments until they are paid; and all part payments are to be forfeited by the non-payment of balance at time stated. In the meantime the said Edward P. Parsons is to keep the property in good order, and may use it free from any other charge; and the said Edward P. Parsons further agrees to pay such price as per memorandum below, and to keep the property sufficiently insured for the benefit of the said Cleveland Machine Works. List of machinery included in the above agreement as follows, with prices annexed:

One $\frac{4.0}{4}$ Cloth Dryer with No. 8 Exhauster, 1,000 feet Heater, and clothing of brass wire set in leather and paper,        $1,100.00
    Terms of payment: $300.00 cash thirty days after shipment, balance four months note, $800.00, dated at time of shipment and interest added.

One 90-inch Blanket Gig and one set of slats,       215.00
    Terms of payment: $50.00 cash thirty days after shipment, balance ($165.00) five months note, dated at time of shipment, with interest added.

EDWARD P. PARSONS."

This paper was signed by Parsons in Boston, and delivered to the plaintiffs before the machines were shipped, but it has never been recorded in Northfield, or elsewhere in this state. Soon afterwards the plaintiffs shipped the machines from Worcester, Parsons paying the freight to Northfield. The machines were placed in his mill, and used therein until his failure, which occurred shortly afterwards. The dryer weighed 7,000 pounds and the gig 3,800 pounds. The gig was not fastened to the floor at all, and the dryer by only two or three screws. Parsons never paid but $100 on the contract, and never claimed the machines to be his property. At the time of the Denny, Rice & Co. attachment, neither they nor the defendant had notice of the plaintiffs' lien.

*Frank N. Parsons* and *William B. Fellows,* for the defendant. The plaintiffs, to maintain their action upon the pleadings, must establish their title and right to immediate possession as against the defendant, who held the property, attached both as personal and

real estate in behalf of Denny, Rice & Co. and several others, creditors of Parsons, who were at the time of the attachment without notice of the plaintiffs' claim to the property replevied.

I. The plaintiffs' claim is invalid if the property was lawfully attached either as real or personal estate. Their title rests upon the agreement of Parsons that the property should remain theirs until paid for, and that his failure to pay according to the terms of the contract should operate as a forfeiture of all that had then been paid. The lien attempted to be retained is invalid under Laws 1885, *c.* 30, the memorandum of sale being neither sworn to nor recorded. *Gerrish* v. *Clark,* 64 N. H. 492; *McNally* v. *Bailey,* 65 N. H. 208.

(1) But the plaintiffs make the claim that no record was required, and that the statute is of no effect, because, while the statute requires the memorandum to be recorded in the town where the purchaser resides, if he reside in this state, otherwise in the town where the vendor resides, neither Parsons nor the vendors reside in this state. It would be a curious construction of the law to hold that the legislature intended to grant to non-residents privileges denied citizens of the state. Such is not the effect of the law.

Previous to June 22, 1832, personal property might be held by mortgage, without possession or record, when it was done honestly and without fraudulent intention; but on that date the legislature enacted " that no mortgage of personal property thereafter made shall be valid against any persons except the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage be recorded in the office of the clerk of the town where the mortgagor shall reside at the time of making the same." Laws 1832, *c.* 80, *s.* 1. This statute is the same in purpose as the one under discussion, and almost identical with it in language, except that the statute of 1885 goes further, and provides for a record when either of the parties resides in this state. In *Smith* v. *Moore,* 11 N. H. 55, decided in 1840, the validity of a personal mortgage by a non-resident mortgagor was attacked under the statute of 1832, and the court, by *Parker,* C. J., say, *p.* 63,—" But by the statute of 1832, it [the mortgage] was of no validity against creditors, . . . unless possession was taken under it. By the provisions of that act, no mortgage of personal property, subsequently made, is valid against any other person than the parties to it, unless possession of the property be delivered to and retained by the mortgagee, or unless the mortgage is recorded in the office of the clerk of the town where the mortgagor resides at the time of its execution. . . . This mortgage could not be made valid against creditors by any record of it, because the mortgagor did not reside in this state at the time, and the record in the town clerk's office, provided by the statute, is a record within this state and not within another gov-

ernment." This gives us a reasonable construction of the statute, and not a ridiculous one as contended for by the plaintiffs. The alternative under the earlier statute, where provision is not made for record of the non-resident mortgagor's mortgage, is, that the possession of the property be retained by the mortgagee ; and under the later statute, that possession be retained by the vendor, and the property be not allowed to pass "into the hands of the conditional purchaser." The evil sought to be cured by the two statutes was identical, the principle the same, the language almost identical, and the construction of the one by the court must now be followed as to the other.

This memorandum was not recorded in Northfield where the property was situate, where the vendee had his business residence, or in this state, or anywhere, so far as appears. It is therefore unnecessary to consider what would have been the effect of any record, since none was made. There was not the slightest effort to comply with the statute. There was no oath attached to the memorandum, as required by *s.* 2, *c.* 30, Laws 1885. The record required is of a memorandum executed in accordance with the statute. In order that the record should be constructive notice, it must be a record of such a memorandum as the statute requires, whatever may be held to be cured by actual notice.

(2) But it is claimed that the validity of this contract is to be tested by the law of Massachusetts. We admit that where residents of another jurisdiction make a contract with reference to personal property within that jurisdiction, whereby a lien is reserved or security created, and the contract is intended to be executed within that jurisdiction, then, if one of the parties subsequently brings the property within this state, the validity of the lien or security is to be determined by the law of the place of the contract. But we claim that where a contract is made to be executed in another jurisdiction, where it is known that if the contract ever has to be enforced by legal process it must be enforced in the forum of another state, or where the personal property, the subject-matter of the contract, is at the time of the contract within another jurisdiction, or is by the terms of the contract to be within that jurisdiction when the contract takes effect, then the contract in either case must be executed and preserved with all the formalities required by the laws of the latter jurisdiction.

(*a*) As to the first proposition, the general rule has always been recognized in this state that where it appears from the express terms of a contract that it was to be executed in a different country from that in which it was made, its validity and obligations are to be tested by the laws of the place where it is to be executed. *Whitney* v. *Whiting*, 35 N. H. 457, 462, *ad fin.; Brown* v. *Collins*, 41 N. H. 405 ; *Jordan* v. *Fitz*, 63 N. H. 227.

In this case the machinery was sold to be used in New Hampshire, was shipped to New Hampshire by the plaintiffs and put

together by them here.    The memorandum of sale or lease was dated " Tilton, N. H."    All the agreements of Parsons were to be performed here, and the plaintiffs seek the aid of New Hampshire courts to enforce the contract.    No reason can be given for claiming that the parties intended to contract with reference to the laws of Massachusetts, unless it is claimed that the parties intended to do so for the express purpose of avoiding our statute. Coming into court with this platform, they are not entitled to especial consideration in this forum.

Whether the property was subject to seizure on legal process in New Hampshire is to be determined by the laws of New Hampshire.    *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 664.

(*b*)  The subject-matter of the contract was in this state at the time of the transfer of the conditional title to Parsons, and when the lien provided for by the memorandum attached.    The memorandum gives Parsons's agreement: the plaintiffs agreed for the price named in the writing to set up the machines in the mill in Northfield.    Until they had performed this agreement they had no claim against him.    They shipped to Northfield a mass of iron and wood, beams, bolts, screws, etc.    What Parsons bought was a machine set up in his mill : when the plaintiffs had collected together the miscellaneous assortment of iron and wood into a - machine such as the contract called for, in the place agreed on (Parsons's mill in Northfield), they were able to make delivery and such title as Parsons had passed to him.    This by the terms of the contract, and in fact, took place in this state.

It is well settled, that where anything remains to be done by the vendor to the goods for the purpose of putting them into the state in which the purchaser is bound to accept them, such performance by the vendor is a condition precedent to the vesting of the property.    Benj. Sa. (4 Am., Bennett's *ed.*) *c.* III, *s.* 318; *Bailey* v. *Smith*, 43 N. H. 141; *Phelps* v. *Willard*, 16 Pick. 29, 32; *Manchester Mills* v. *Rundlett*, 23 N. H. 271, 274.

The property being situate in this state at the time the title passed, the validity and obligation of the contract of transfer are to be tested by the laws of this state.    *Clark* v. *Tarbell*, 58 N. H. 88.

II.  The defence set up in the second brief statement concludes the plaintiffs' right of recovery, whatever may be held as to the first.    The machinery being essential to the business for which the real estate was occupied, and being placed therein with the assent of the plaintiffs (by them, in fact), became a part of the real estate as to them as against the claim of a subsequent mortgagor, purchaser, or attaching creditor without notice.

" Machines and other articles essential to the occupation of a building or to the business carried on in it, and which are affixed or fastened to the freehold and used with it, partake of the character of real estate, become part of it, and pass by a conveyance of

the land. Nor does so much depend upon the character of the fastening, whether it be slight or otherwise, as it does upon the nature of the article and its use, as connected with the use of the freehold." *Burnside* v. *Twitchell*, 43 N. H. 390, 394. "The mode of annexation is not the controlling test. . . . It may be sufficient if it is held in position by its own weight." *Langdon* v. *Buchanan*, 62 N. H. 6ъ7. The machines in question were purchased as a permanent addition to the plant. *Cavis* v. *Beckford*, 62 N. H. 229.

It is conclusively established, that a subsequent vendee, mortgagee, or attaching creditor *without notice*, will take and hold as part of the real estate chattels affixed thereto prior to the execution of the deed or date of the attachment, although as against the grantor or debtor they were the property of a third party with the right to disannex and remove them. *Richardson* v. *Copeland*, 6 Gray 536; *Powers* v. *Dennison*, 30 Vt. 752; *Haven* v. *Emery*, 33 N. H. 66; *Corey* v. *Bishop*, 48 N. H. 146, 149, 150; *Landon* v. *Platt*, 34 Conn. 517; *Prince* v. *Case*, 10 Conn. 375; *Hunt* v. *Iron Co.*, 97 Mass. 279; *Cochran* v. *Flint*, 57 N. H. 514, 544; *Clary* v. *Owen*, 15 Gray 522; *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542, 545; *Thompson* v. *Vinton*, 121 Mass. 139; *Smith Paper Co.* v. *Servin*, 130 Mass. 511, 516; *Southbridge Savings Bank* v. *Stevens Tool Co.*, 130 Mass. 547, 551; *Ridgeway Stove Co.* v. *Way*, 141 Mass. 557; *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519, 521; *Meagher* v. *Hayes*, 152 Mass. 228; *Davenport* v. *Shants*, 43 Vt. 546. In the cases cited, *Bank* v. *Exeter Machine Works* and *Stove Co.* v. *Way*, precisely the same claim of title here made by the plaintiffs was held invalid.

(c) If the memorandum upon which the plaintiffs rely had been properly executed and recorded under chapter 30, Laws of 1885, such record would not have been notice to the subsequent attaching creditors of the real estate, and would not bar their right to hold the property replevied as part of the realty. *Tibbetts* v. *Horne*, 65 N. H. 242.

III. The case is very tersely stated. The conclusions we have drawn, as to the nature and character of the property, the object of its purchase, and the manner of its annexation to the realty, seem to us to follow inevitably from the facts found. Should it become material to have distinct findings on those points as matters of fact, and the court be of opinion that the burden in relation thereto rests with us rather than with the plaintiffs, then we ask that the case be recommitted for distinct findings of fact on those points.

*E. A. & C. B. Hibbard* and *Charles C. Rogers*, for the plaintiffs. 1. The entire contract was made in Massachusetts. The only part of the contract that was reduced to writing was executed and delivered in Massachusetts, and the fact that it was dated at

Tilton in this state could not estop the plaintiffs from proving those facts and could not operate to control their effect. No provision as to the place of performance of any part of the contract is expressly stated, except for the plaintiffs' agreement to send a man to Northfield to set up the machines, if that is to be regarded as any part of the contract of sale instead of an independent promise. The place of payment would, therefore, evidently be Worcester, Massachusetts, where the plaintiffs did business, and the place of delivery of the machines (which is really the place of sale and the only place material for consideration) would be Worcester, where the machines were delivered to the common carrier, there being no agreement to deliver at any other place. That the place of delivery was in fact Worcester, and not Tilton or Northfield, is also shown by the fact that the time of shipment was to determine the time of the cash payments, and the date, and so the time of payment, of the notes, and especially by Parsons's paying the freight from Worcester. The agreement to send a man to Northfield to set up the machines has nothing to do with determining the place or time of delivery, any more than an agreement to keep the machines in order for a year would have had. The setting up of the machines was not made a condition of the purchase. If they had been destroyed on the way to Northfield, without fault of the plaintiffs, the loss would have been Parsons's and not the plaintiffs', and he could not have defended a suit for the price. To the last point may be cited *Mount Hope Iron Co.* v. *Buffinton,* 103 Mass. 62, a direct authority, and *Arnold* v. *Prout,* 51 N. H. 587, a case not quite parallel, but analogous. The other points are established in a long line of cases. *Woolsey* v. *Bailey,* 27 N. H. 217 ; *Smith* v. *Smith,* 27 N. H. 244 ; *Smith* v. *Godfrey,* 28 N. H. 379 ; *Banchor* v. *Warren,* 33 N. H. 183 ; *Garland* v. *Lane,* 46 N. H. 245 ; *Hill* v. *Spear,* 50 N. H. 253 ; *Boothby* v. *Plaisted,* 51 N. H. 436 ; *Corning* v. *Abbott,* 54 N. H. 469 ; *Fuller* v. *Leet,* 59 N. H. 163.

2. The sale having been made in Massachusetts, its validity depends on the laws of Massachusetts, and is not affected by the fact that the plaintiffs knew that the machines were to be immediately brought to this state. The cases before cited are sufficient authority for this. If knowledge even that the purchaser of intoxicating liquors in another state, where they may be legally sold, intends to commit a crime by selling them in this state in violation of our law, does not preclude the seller from recovering the price in this state (*Smith* v. *Godfrey, Hill* v. *Spear, Corning* v. *Abbott, Fuller* v. *Leet,* before cited), it cannot be supposed that knowledge on the part of these plaintiffs that the machines were to be brought here, and that our law requires certain formalities to be complied with in order that conditional sales here made shall be valid against every one, would make the sale in Massachusetts invalid as a conditional sale. But there is no proof, and

no reason to suppose, that the plaintiffs knew there was any such law in this state, and while for many purposes all persons are conclusively presumed to know the law, there is no such conclusive persumption (and would in the present case be no presumption at all) for the purpose of imputing an attempt at evasion of our law by making the sale elsewhere so as to escape the necessity of the formalities.

3. The burden of proof was undoubtedly on the plaintiffs to establish their title, and they have sustained it by proving a title which is admittedly good against Parsons and good against persons in general. Having shown this, they are not obliged to go farther, either in pleading or in evidence, and negative every sort of special title that may exist in particular persons consistently with the title in them which they have alleged and proved. For instance, the defendant might have been an officer who had attached the machines on a writ against the plaintiffs, or some other officer might have so attached them; but in that case the defendant would have had to allege and prove such fact. If the defendant wishes to defend on the ground that the machines were as to certain persons real estate and not subject to replevin, or on the ground that they were as to such persons real estate of Parsons, on which they have a lien (by their attachment) prior to the plaintiffs' right, the burden is on him to establish the facts on which such defence rests. On such an issue various facts might be material which are in his knowledge and not in theirs, while probably no material facts would be in their knowledge and not in his. It is not like the ordinary plea of title in another person, where the title set up in the plea is mere inducement, the real purport of the plea being a traverse of the plaintiffs' title, but is a plea in confession and avoidance.

4. The facts stated in the reserved case are, of course, consistent with such an annexation of the machines to the real estate that they would be a part of it as between vendor and purchaser (or as between mortgagor and mortgagee, or administrator and heir, the principle of which is the same); but they are equally consistent with only such an annexation as would not produce that effect. The facts that the machines were "essential to the business for which the real estate was occupied," that they "were purchased as a permanent addition to the plant," and other facts that might determine the point in favor of the defendant's contention, do not "follow inevitably from the facts found," however it may seem to the defendant's counsel. If they were not so annexed that they would be a part of the realty as between vendor and purchaser, then on the facts found, conceding all that the defendant contends for as matter of law to be correct, they would still be personal property, not only as between the plaintiffs and Parsons, but as between the plaintiffs and the defendant, the attaching creditors, or any other persons whomsoever, and the

defence set up in the second brief statement confessedly fails. It is, therefore, the defendant that should apply for an amendment of the reserved case, in order to establish, if he can, the first point in his second defence. If, however, in some view of the case that we have overlooked, it should appear that it lies on the plaintiffs to show that these machines would not have been realty as between vendor and purchaser, we should wish a chance to secure the necessary amendment of the reserved case, if such an amendment would be material, that is to say, if the defence would be sustained in case the machines would have been realty as between vendor and purchaser, a question which is next in order for discussion.

5. Assuming that the machines had been so annexed that they would have been a part of the realty as between vendor and purchaser, some of the authorities cited in the defendant's brief sustain his position so far as that they would also have been a part of the realty as between the plaintiffs and any one who should after such annexation have purchased the real estate of Parsons in good faith, without notice, and for a valuable consideration paid at the time of the purchase or later; or as between the plaintiffs and any one who should after such annexation have taken a mortgage of the real estate in good faith, without notice, to secure money advanced at the time. Several of the Massachusetts cases cited as authorities for the defendant extend this principle to the case of a mortgagee whose mortgage was prior to the annexation; but such an extension has been repudiated in this state. *Cochran* v. *Flint*, 57 N. H. 514; *Langdon* v. *Buchanan*, 62 N. H. 657. None of the cases cited extend the principle to a purchaser not for value, to one who takes a deed of the land in payment of an antecedent debt, to a mortgagee whose mortgage is to secure an antecedent debt, or to an attaching or levying creditor.

The true principles of the authorities relied on by the defendant, after the qualification required by the New Hampshire cases just cited is made, may be stated thus: First, the common-law principle that the true owner of property is in certain cases estopped from setting up his title against an innocent purchaser for value from one whom the owner has invested with an apparent title, if the purchaser would otherwise be defrauded; second, the principle under the statute of records, as interpreted by the court (somewhat modifying its apparent meaning), that one who claims real estate under another, except as heir (or perhaps as devisee, though the latter exception is, we think, not established by any direct decision in this state), is not to be cut off by an unrecorded deed from the same grantor, of which he had no notice. While the mere delivery of the machines to Parsons would not be enough to bring this case under the first principle, the delivery with authority for him to annex them to his real

estate is held by the authorities cited in the defendant's brief to be enough for that purpose; and then, under the second principle, any person entitled under the first principle to have the machines regarded, as to him, as Parsons's real estate, not being constructively notified by record in the registry of deeds of any properly executed declaration by Parsons of the state of the title, could hold them against the plaintiffs.

The second principle is applied in favor of an attaching creditor, a grantee for a past consideration, or a mortgagee whose mortgage is to secure a past debt. But the first principle is not applied in favor of any of these classes. *Sleeper* v. *Davis*, 64 N. H. 59; *Farley* v. *Lincoln*, 51 N. H. 577. We cite the latter case on account of the reasons on which the decision is based, although it might have been decided on another ground, which would have applied also to a case under the second principle. *Adams* v. *Lee*, 64 N. H. 421.

It is true that the plaintiffs in *Sleeper* v. *Davis* were not conditional vendors, but vendors rescinding the sale for fraud in the purchase; but there is no reason why a voidable sale should stand better than a conditional sale, so far as the rights of the vendors are concerned. In fact, the conditional sale stands much better at common law in the case where there is no annexation to realty, which is the only case where they can be directly compared in the light of distinct decisions, since the voidable sale cannot, even without annexation, be avoided against an innocent purchaser for value paid at the time. While there are authorities that a conditional sale with annexation to realty stands like a voidable sale without annexation, we submit that it stands no worse, and indeed that a voidable sale stands no worse with than without annexation to realty, so far as relates to the vendor's rights; for it can hardly be contended that the defendant in *Sleeper* v. *Davis* would have prevailed if the goods had been machines annexed to the realty of the fraudulent purchaser, and he had taken a deed of the realty in settlement of his debt. Still if that were so, it would not follow that it is true of a conditional sale, since that, standing better without annexation than a voidable sale, might well stand better also with it.

Of course there might be an annexation by which the true owner might completely lose his property in the thing annexed, even as against a wrongdoer, as, for example, if the owner of land steals a brick and uses it in the chimney of a house he is building. No such question is presented here.

The case of the voidable sale presents the nearest analogy to that of the conditional sale with annexation that we are able to suggest. It remains only to remark, on this point, that the cases where a sale is good between the parties, but bad as to other persons claiming under the vendor on account of a defective delivery, are not analogous. In those cases there is no actual sale,

because a sale requires a delivery. Between the parties, the fiction of a delivery completing the sale and a bailment back may be allowed, but other persons claiming under the vendor may take advantage of the incompleteness of the sale.

6. If it could be contended that a creditor, whose credit was given subsequently to the annexation and on the faith of Parsons's apparent title to the machines as a part of the realty, could hold them as realty under an attachment of the real estate, and that it was to be presumed in the absence of evidence to the contrary that the credit was given on the faith of such apparent title, it is at least, on principles before stated, incumbent on such a creditor. (or on the defendant setting up such creditor's right) to prove that the credit was subsequent to the annexation, which has not been proved in the present case. The presumption, also, could not be applied in this case, since the creditors showed their understanding of the matter by attaching the machines as personalty. It was evidently from the defendant's counsel in this case that they first learned, probably after the present action was brought, that there might be an advantage in treating the machines as a part of the real estate, and therefore as held under their attachment of the real estate.

7. Suppose a mere trespasser had come into Parsons's mill and injured the machines: there can be no question that trespass would lie against him in favor of the plaintiffs, or trover or replevin if he converted them. Suppose he had with force and arms taken possession of the mill, turned Parsons out, and refused to let the plaintiffs have the machines : there can be no question that they might have maintained the same actions, although there had been no severance from the realty. If they had actually been a part of the realty, trover and replevin could not have been maintained unless there had been a severance ; for example, Parsons himself would have had to adopt a different remedy. But the trespasser could not be allowed to defend on the ground that somewhere in the world were certain persons against whom the plaintiffs were estopped to deny that the machines were realty, and realty on which they had a lien.

The defendant, admitting by his first plea that he was in possession of the machines as personal property, and failing to hold them as such, because, if they were personal property, they were the plaintiffs' personal property, stands in his second plea exactly as such a trespasser. Suppose the court sustain him in every position (with respect to his second defence) suggested in his brief: the result at most is, only that Denny, Rice & Co. had a right to have the property regarded as a part of the real estate, and had a lien on it entitling them to object to its removal; but the defendant had nothing to do with this. When he filed his return of an attachment with the town clerk of Northfield, his rights and duties with respect to the real estate were ended, and

with respect to the machines, if they were a part of the real estate. Denny, Rice & Co. may have been entitled to an injunction against the removal of the machines, and, if so, this case, to which they were not parties, would not have prevented them from obtaining one, and, in fact, though not stated in the reserved case, they had ample opportunity. They did not see fit to apply for an injunction. Undoubtedly, if the defendant had been in possession of the machines as their bailee or agent, he might properly, if his second defence is otherwise sustained, have received them back, or received their value and have held it for them the same as he did the machines; but he was not a bailee of the real estate, or an agent with respect to it. Denny, Rice & Co. had not entrusted him with the possession of the real estate, or even knowingly suffered him to take possession of it. Regarding him as a trespasser, how can he be liable to account to them for the amount he recovers in this case, if he recover anything? and if he should not account to them for it, how could they have been barred from maintaining a bill to restrain the plaintiffs from removing the machines, and then from proceeding in their action and levying on the machines with the other realty? While we do not suggest that the defendant will actually refuse to account for anything he may recover, it is not improper to test the rights of parties by a supposition which may be a fact in the next case requiring the application of the same principle.

*Frank N. Parsons* and *William B. Fellows*, for the defendant.
1. The law of New Hampshire determines the validity of the plaintiffs' title. *Walworth* v. *Harris*, 129 U. S. 355, 364, 365; *Equitable Life Assurance Society* v. *Clements*, 140 U. S. 226; *Coghlan* v. *Railroad*, 142 U. S. 101; *Dyer* v. *Hunt*, 5 N. H. 401, 405.
2. The written contract dated at Tilton makes that place the place of payment. It is immaterial where it was actually signed.
3. The actual contract was a sale to Parsons, with the device of a so called lease as security for the payment of the price. The question is not the validity of the sale, but whether the courts of this state will enforce a remedy allowed by the law of another state. It is elementary that the courts of one state do not enforce the laws of another, or give effect to remedies not authorized by their own laws. *Rice* v. *Merrimack Hosiery Co.*, 56 N. H. 114, 127, 129.

The plaintiffs, in taking possession of the property under their writ, were merely seeking to enforce this remedy under their contract for the failure of Parsons to pay the full contract price, and they claim a forfeiture of the amount he had paid. They do not prove a case which under the law, whose aid they seek, entitles them to this remedy.
4. The analogy of the legislation as to sales upon condition to

that relating to chattel mortgages referred to in our first brief, is further illustrated by P. S., *c.* 140, *s.* 23, *cl.* III.

5. The plaintiffs claim that if the machines are real estate, the sheriff had by the attachment no possession of them. The action is replevin. The plaintiffs' writ alleges that the defendant took them, and to maintain their suit they must prove the allegation unless it is admitted by the pleadings: upon the claim in the plaintiffs' brief the defendant is entitled to judgment. Neither can replevin be maintained for real estate. If Denny, Rice & Co. had adopted the course suggested, and applied for an injunction because of the claim that the property had become realty, the answer in that case would have been, replevin would not lie, that the plaintiffs proceeded at their peril, and that Denny, Rice & Co.'s remedy was through the sheriff on the bond.

6. Whether by the attachment the sheriff had such a possession as to entitle him to maintain trespass is immaterial in this action. He sold the real estate upon the execution, and presumably for a sum lessened by the value of the property the plaintiffs wrongfully carried away. Whatever sum may come to his hands as damages will be so much more from the sale of the real estate to be applied as the law directs, and a failure to so apply it would be a breach of his official bond.

7. An attaching creditor is a purchaser for value. *Lanfear* v. *Sumner*, 17 Mass. 110, 113, 115.

*E. A. & C. B. Hibbard* and *Charles C. Rogers*, for the plaintiffs. We reply briefly to the points in the additional brief for the defendant (using the same numbers), so far as seems necessary, referring to our former brief for additional discussion of several of the points.

1. It is not true that "The law of New Hampshire determines the validity of the plaintiffs' title" in any sense that denies that a part of that law is the recognition of a title acquired in another state while the property was there.

The first case cited, *Walworth* v. *Harris*, 129 U. S. 355, is one of a statutory lien, requiring no possession, and therefore of a kind unknown to the common law, and apparently unknown to the law of Louisiana, the state to which the property was taken; and it would evidently require some special procedure for its enforcement, incongruous with the laws of Louisiana. The title of a conditional vendor is that of ordinary ownership, subject to the condition. It is a common-law title, well known to our law, which has made no change in it except to require a memorandum in cases subject to that law, and every civilized state must have appropriate procedure for protecting it. The other three cases cited need no comment, as they are plainly of a different character from the present case. *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 664, cited in the defendant's former brief and in *Walworth*

v. *Harris*, appears to have turned on the fact that by the common law, as held in Illinois, the title of a conditional vendor is fraudulent as to creditors, and that the courts of that state refuse to apply the principle of comity so as to recognize a different rule if the sale was made in a state where it was not fraudulent as to creditors.   The United States courts, of course, have no authority to overturn the domestic laws of Illinois of this character.   In *Green* v. *Van Buskirk*, 5 Wall. 307 and 7 Wall. 139, also cited in *Walworth* v. *Harris*, the transfer was made in New York, but the property was at the time in Illinois, where it was afterwards attached.   If delivery had been made in New York, the decision would have been an authority for the defendant, but it was not.

2. The written contract dated at Tilton does not state any place of payment.   So far as there is any place of payment under such a contract, it is Worcester, Massachusetts, the plaintiffs' place of business.   But the material point is the place of performance of that part of the contract which passed the conditional title to the machines, and that place is Worcester, where the machines were delivered.

3. The remedy sought by the plaintiffs is replevin, which is a remedy provided by the laws of New Hampshire.   They claim no advantage from the existence of replevin as a legal remedy under the laws of Massachusetts, but rely on the laws of that state only as determining what title to the machines passed by their delivery there under the contract.   Whether " they claim a forfeiture of the amount he [Parsons] had paid " does not appear and is not material.

4. The clause cited would have applied if the machines had been delivered in New Hampshire after its passage.   They were delivered in Massachusetts before its passage.

5. The plaintiffs claim that if, although the machines were personal property, they would be estopped, as against attaching creditors, to deny that they were real estate and that the attachment of them as real estate was valid, yet the defendant had no rightful possession of them as real estate; that his possession of them was as of personal property; that as between him and the plaintiffs they were personal property; and that he cannot be allowed to set up in defence a special title in a third person, the sustaining of which would show him to have been a mere trespasser in taking possession (as it appears from the other plea he did), when the other circumstances of the case are such as are here presented, or at least that it would not be such a defence as to entitle him to a judgment for a return or for damages.   If one person with no title takes goods by replevin out of the hands of another with no title, a return may be proper, since the defendant is liable to the owner for his conversion, and there is no justice in allowing one trespasser, the plaintiff, to have the goods, while another trespasser, the defendant, must pay for them; but the

present case is much as if the plaintiffs, being owners of a horse kept at a boarding-stable, should replevy it out of the hands of a trespasser, and the defendant should set up the lien of the stable-keeper, nothing appearing to show that the latter cared to assert his lien. Yet that case would be somewhat stronger than this, since the stable-keeper would have a right to the possession of the horse till the charges for keeping were paid, if he chose to assert it, while in this case the attaching creditors have no such right, and their possession would have been a trespass, as well as the defendant's.

If Denny, Rice & Co. had applied for an injunction and been otherwise sustained, they would not have been turned off on the ground that the defendant in the equity case had replevied the machines from some third person who might be persuaded to set up their title in defence and to let them have the proceeds if he prevailed. That would not be an adequate remedy, even if it were clear that the third person ought to prevail.

6. The allegation that the defendant sold the real estate upon the execution is unsupported by the reserved case. If true, it would be immaterial. Damages recovered by him in this case would not be received by him from the sale of the real estate: the law does not direct how he should apply damages so received, and a failure to apply them as he morally should would be no breach of his official bond. If he prevailed in this case on the strength of his attachment of the machines as personal property, it would of course be otherwise.

7. The opinion in *Lanfear* v. *Sumner*, 17 Mass. 110, contains a statement that the attaching creditors are to be considered as purchasers for a valuable consideration; but it is a mere *obiter dictum*, the plaintiff being a creditor who had an assignment, and the defendant being an officer who had made an attachment for another creditor. If the defendant had been a creditor who had a subsequent bill of sale of the goods in part satisfaction of his debt, and had taken possession before the plaintiff, the decision would have been the same. The actual decision, moreover, is not law in this state. *Ricker* v. *Cross*, 5 N. H. 570, 573. If the *dictum* is to be regarded as intended for a universal application, and not merely for application to the facts of the case, it conflicts with *Sleeper* v. *Davis* and other cases cited in our former brief.

*Frank N. Parsons* and *William B. Fellows*, for the defendant. In support of the defendant's claim that the plaintiffs' title is to be tested by the law of New Hampshire relating to personal property sold upon condition, because the contract for security was made to be enforced in New Hampshire and by the courts of this state, and to take effect upon the subject-matter of the contract only within New Hampshire, we call the attention of the court to the decision in *Davis* v. *Ins. Co.*, ante, 218.

CLARK, J.   By the terms of the contract the machines were to remain the property of the Cleveland Machine Works until paid for.   The contract was negotiated in Massachusetts, by citizens of Massachusetts, respecting property situated in Massachusetts. The shipment of the machines at Worcester—Parsons paying the freight from that point—made Worcester the place of delivery, and vested in Parsons all the right and interest he ever acquired in the property.   The agreement to send a man to set up the machines at Northfield was not a condition precedent to the vesting of the conditional title in Parsons, any more than an agreement to furnish instruction as to the mode of operating the machines would have been.   The written agreement shows that the parties understood that the conditional title passed upon the shipment of the machines, by fixing the times of payment from that date.   The contract was a conditional sale of chattels in Massachusetts, negotiated and completed there by Massachusetts parties, and valid by the law of Massachusetts; and being valid where it was made, its validity was not affected by the subsequent removal of the property to New Hampshire.   *Sessions* v. *Little*, 9 N. H. 271; *Smith* v. *Godfrey*, 28 N. H. 379; *Stevens* v. *Norris*, 30 N. H. 466.

As a general rule, contracts respecting the sale or transfer of personal property, valid where made and where the property is situated, will be upheld and enforced in another state or country, although not executed according to the law of the latter state, unless such enforcement would be in contravention of positive law and public interests.   A personal mortgage of property in another state, executed and recorded according to the laws of that state, is valid against the creditors of the mortgagor attaching the property in this state, although the mortgage is not recorded here.   *Offutt* v. *Flagg*, 10 N. H. 46; *Ferguson* v. *Clifford*, 37 N. H. 86.   A mortgagor of horses in Massachusetts, bringing them into this state, cannot subject them to a lien for their keeping against the Massachusetts mortgagee.   *Sargent* v. *Usher*, 55 N. H. 287.   A boarding-house keeper's lien under the laws of Massachusetts is not lost by bringing the property into this state.   *Jaquith* v. *American Express Co.*, 60 N. H. 61.

Formerly by the law of Vermont a chattel mortgage was invalid against creditors of the mortgagor if the property remained in his possession.   But it was held both in Vermont and in New Hampshire that a mortgage of personal property in New Hampshire, duly executed and recorded according to the law of New Hampshire, was valid against creditors of the mortgagor attaching the property in his possession in Vermont. *Cobb* v. *Buswell*, 37 Vt. 337; *Lathe* v. *Schoff*, 60 N. H. 34.   In *Cobb* v. *Buswell* the property was taken to Vermont with the consent of the mortgagee, and in *Lathe* v. *Schoff* it was understood, when the mortgage was executed, that the horses mortgaged

were to be removed to Vermont by the mortgagor and kept there after the season of summer travel closed. So a chattel mortgage made by a citizen of Massachusetts temporarily in New York with the mortgaged property, if valid by the law of New York, is valid against the creditors of the mortgagor attaching the property in his possession in Massachusetts. *Langworthy* v. *Little*, 12 Cush. 109.

The law of New Hampshire respecting conditional sales has no extra-territorial force, 'and does not apply to sales made out of the state. Neither the parties nor the subject-matter of the contract respecting the machines were within its operation. If the conditional sale had been made in this state before the statute was enacted requiring an affidavit of the good faith of the transaction and a record in the town clerk's office, it would not have been affected by the statute. When the machines were brought to this state, there was no provision of the statute for recording the plaintiffs' lien. There was no change or transfer of title in this state, and the title of the plaintiffs, valid against creditors under a contract completed in Massachusetts, was not destroyed by the removal of the property to New Hampshire.

*Smith* v. *Moore*, 11 N. H. 55, cited by the defendant as sustaining the position that the plaintiffs' lien was destroyed because there was no law in this state providing for a record in such a case, is an authority against the defendant. In that case the property was in this state when the mortgage was made, the mortgagor residing out of the state. The court say,—"If the property had been situated out of the state when the mortgage was made, and the mortgage had been valid according to the law of the place, a subsequent removal of the property to this state would not have affected its validity," citing *Offutt* v. *Flagg*, 10 N. H. 46.

Conditional sales were valid in this state without record until January 1, 1886. *McFarland* v. *Farmer*, 42 N. H. 386; *Holt* v. *Holt*, 58 N. H. 276; *Weeks* v. *Pike*, 60 N. H. 447. The statute of 1885, *c.* 30, had no application to contracts between parties residing out of the state, and made no provision for recording such contracts. The fact that the contract is not within the statute is an answer to the position that the plaintiffs' title is to be tested by the law of New Hampshire.

The attachment of the real estate gave the defendant no possession of or right of property in the machines. *Scott* v. *Manchester Print Works*, 44 N. H. 507. By attaching them as personal property, the defendant claims to hold the possession and property in them, as the property of Parsons, for the benefit of the attaching creditors. If Parsons had an attachable interest subject to the plaintiffs' lien, the defendant's claim to hold the entire property under the attachment entitles the plaintiffs to maintain replevin, if they have any title to the machines and there is no

estoppel. As between the plaintiffs and Parsons, the machines were the property of the plaintiffs. They were never the property of Parsons. He was simply a bailee, and never claimed to own them.

"Judgment and execution liens attach to the defendant's real, instead of his apparent, interest in the property. It follows from this that the sale made under such a lien can ordinarily transfer no interest beyond that in fact held by the defendant when the lien attached, or acquired by him subsequently thereto and before the sale." Freem. Ex., *s.* 335. A purchaser at a sheriff's sale, there being no estoppel, acquires no title to property not belonging to the debtor. *Bryant* v. *Whitcher,* 52 N. H. 158.

An attaching creditor is not in the position of a purchaser for a valuable consideration without notice of any defect of title. The defendant, and the creditors of Parsons whom he represents, do not occupy the relation of *bona fide* vendees or mortgagees for value without notice. They stand no better than Parsons, who never owned or claimed to own the machines. Their claim to hold the property against the plaintiffs' title is based upon Parsons's ownership, and not upon any attempted transfer of title by him to them; and as he had no title they took nothing by the attachment.

The case has no analogy to an attachment of property to which the debtor has a voidable title valid until rescinded (*Bradley* v. *Obear,* 10 N. H. 477), or to the numerous class of cases where the debtor once had a valid title which he has conveyed or transferred in fraud of creditors.

As Parsons had no title to the machines, and as no legal or equitable ground of estoppel to the assertion of the plaintiffs' title is shown, the plaintiffs are entitled to judgment.

*Judgment for the plaintiffs.*

BLODGETT, J., did not sit: the others concurred.