N. LEWIS COOPER et al.

*v.*

PHILADELPHIA WORSTED COMPANY.

[Submitted December 3d, 1904. Decided March 20th, 1905.]

1. Where a contract, with reference to the title of tangible chattels situated in another state, is made in that state between a resident thereof and a New Jersey corporation, and is to be performed there, the law of that state determines the effect of the contract.

2. The act of 1889 as to conditional sales does not apply to contracts made and to be performed in another state, with reference to chattels situated there, between a resident of that state and a New Jersey corporation; nor does the act become applicable when the chattels are subsequently brought into this state without the consent of the former owner.

On appeal of Mary J. Lees et al. from a decree advised by Vice-Chancellor Reed, whose opinion is reported in 57 *Atl. Rep.* 733.

This case involves the ownership of machinery of the Philadelphia Worsted Company, an insolvent corporation of this state. The receiver makes no claim and submits himself to the judgment of the court. The controversy is between the executors of Daniel Lees, deceased, formerly of Lenni, Pennsylvania, and Harding, Whitman & Company, a copartnership, the members of which do not reside in the State of New Jersey. The machinery was formerly owned by Lees, at Lenni. On November 24th, 1899, an agreement was entered into between Lees and the Philadelphia Worsted Company, which purported by its terms to lease the machinery in question to the company for the term of two and one-half years, for a rental of $6,000, payable $2,000 on the execution of the agreement, $1,000 in twelve months, $1,000 in eighteen months, $1,000 in two years and $1,000 at the expiration of the term, the deferred payments to bear one per cent. interest. The company agreed to pay the rent and to surrender the property at the expiration of the lease. The agreement then provided that if upon surrendering the property, the rent having been fully paid, the company desired to purchase the leased property, Lees would sell. the same for $6,000, with six per cent. interest, and that the amount received for rent should be applied upon the purchase-price. In case of default in payment of the rent or performance of the covenants by the company, the vendor might take possession of the property. The machinery was delivered at the date of the execution of the agreement to the company, at Lenni, for use in its mill at that place, and was there used by the company continuously until April, 1901; in April and May, 1901, it was moved into this state, with the knowledge, but against the will, of Lees. Lees died May 30th, 1901. The corporation was adjudged insolvent and a receiver appointed in this state October 22d, 1903. At the time of his appointment a suit by Harding, Whitman & Company against the corporation was pending; judgment was entered October 26th, 1903; execution issued and a levy made October 30th, 1903. The judgment creditors were without notice of the lease or agreement for conditional sale. That agreement was recorded in Camden county, in this state, October 27th, 1903.

*Mr. Edmund B. Leaming,* for the appellants.

*Mr. Thomas E. French,* for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

The agreement in question, under Pennsylvania law, constituted a bailment, and the title of Lees was good in Pennsylvania. *Stadtfeld* v. *Huntsman, 92 Pa. St. 53; Ditman* v. *Cottrell, 125 Pa. St. 606; 17 Atl. Rep. 504; Brown Brothers* v. *Billington, 163 Pa. St. 76; 29 Atl. Rep. 904; Lippincott* v. *Scott, 198 Pa. St. 283; 47 Atl. Rep. 1115; Marvin Safe Co.* v. *Norton, 48 N. J. Law (19 Vr.) 410.*

For the purposes of this case, we may assume that the contract would here be construed as a contract for conditional sale, which, under the New Jersey statute, if it is applicable, would be void as against judgment creditors not having notice thereof, unless recorded as directed by the statute.

The question to be decided is whether the validity of the appellants' title is to be determined according to the law of Pennsylvania or the law of New Jersey.

The general rule is that the assignment of a movable, wherever situate, in accordance with the law of the owner's domicile, is valid. *Dicey on Conflict of Laws 535 (rule 142).* But this is subject to the rule that "an assignment of a movable which can be touched, giving a good title thereto according to the law of the country where the movable is situate at the time of the assignment, is valid." *Dicey on Conflict of Laws 535 (rule 140).* These rules have been 'the settled law of the English courts since the decision of *Cammell* v. *Sewell,* in the exchequer chamber, in 1860. *5 Hurlst. & N. 728; 5 Eng. Rul. Cas. 891; 29 Law Jour. Ex. 350. Cammell* v. *Sewell* was approved in the house of lords in 1870. *Castrique* v. *Imrie, 39 Law Jour. C. P. 350; L. R. 4 H. L. 414; 5 Eng. Rul. Cas. 899*—see especially the opinion of Lord Blackburn. See, also, *In re Queensland Mercantile and Agency Company, 1 Ch. Cas. 536 (1891); 60 Law Jour. Ch. 579;* affirmed on a

different ground, *1 Ch. Cas. 219 (1892)* ; *61 Law Jour. Ch. 145,* but without dissent on this point. The rule has been applied to bills of exchange transferred in a foreign country. *Alcock* v. *Smith, 1 Ch. Cas. 238 (1892)* ; *61 Law Jour. Ch. 161,* and in the most recent case—*Embericos* v. *Anglo-Austrian Bank, 2 K. B. 870 (1904)* ; *73 Law Jour. K. B. 993.*

In *Hooper* v. *Gumm, L. R. 2 Ch. 282; 36 Law Jour. Ch. 605,* the general rule was recognized, but the holder of the encumbrance, which was valid by American law, intentionally concealed it, and was not permitted to assert it against a *bona fide* purchaser for valuable consideration under an English contract.

The cases in our own courts are not in conflict with the rule of the English courts. In *Varnum* v. *Camp, 13 N. J. Law ( 1 Gr.) 326 (1833),* two classes of goods were involved. Some were goods in the store at Paterson, in this state, at the time the assignment was made in New York; some were in the store in New York, and were sent to Paterson after the assignment. It was held that the assignment did not transfer the title to the goods then at Paterson, but did transfer the title to the goods then in New York, and accordingly it was held that the plaintiff was entitled to a portion of the articles replevied and the defendant to the residue. The court thus clearly recognized that the validity of the transfer depended upon the actual *situs* of the goods. The opinion of Chief-Justice Ewing, and his citations from other cases, show that this was the view held by him. Thus he says (at *p. 331*) : "Every country has the right of regulating the transfer of all personal property within its territory, but when no positive regulation exists the owner transfers it at his pleasure," and (on *p. 332*) he quotes with approval the following language of Justice Johnson, in *Smith* v. *Union Bank of George-town, 5 Pet. 518:* "That personal property has no *situs*, seems rather a metaphysical position than a practical and legal truth. * * * In point of fact, it cannot be questioned that goods found within the limits of a sovereign's jurisdiction are subject to his laws; it would be an absurdity, in terms, to affirm the contrary."

In *Frazier* v. *Fredericks, 24 N. J. Law (4 Zab.) 162 (1853),* it

was held that a voluntary assignment made in Pennsylvania for the benefit of creditors would pass the title to a boat lying at a wharf in New Jersey as against an attaching creditor, but in that case there was no conflict between the law of Pennsylvania and the law of New Jersey. Chief-Justice Green said: "Admitting the assignment to be valid by the laws of Pennsylvania, where the assignment was executed, there is nothing in its terms repugnant to the provisions of our statutes or to the policy of our laws."

In *Runyon* v. *Groshon, 12 N. J. Eq. (1 Beas.) 86 (1858)*, the original owner of the picture and both claimants were domiciled in New Jersey, and the complainant was foreclosing his mortgage in our courts. There was no difficulty in the way of following the law of the domicile. The chancellor recognized the right of New York to declare how personal property situated there should be transferred, and added: "The property is protected by her laws, and it is but reasonable that it must be held and transferred agreeable to such regulations as that state may see fit to adopt."

In *Moore* v. *Bonnell, 31 N. J. Law (2 Vr.) 90 (1864)*, an assignment made in New York by a resident of that state was held to transfer a debt due from a resident of this state, although the assignment made preferences and would have been invalid under our law. The case did not involve the title to tangible goods situate in New Jersey, and the citation by the learned chief-justice, from *Story on the Conflict of Laws,* recognizes the difference in a case where the particular property from its nature has a necessarily implied locality. Moreover, the question in *Moore* v. *Bonnell* arose between an attaching creditor, whose domicile was the same as the domicile of the assignor, and in this respect the case resembled *Runyon* v. *Groshon.*

The New Jersey cases thus far cited were either in the supreme court or in the court of chancery. *Bentley* v. *Whittemore, 19 N. J. Eq. (4 C. E. Gr.) 462 (1868)*, was in this court. In that case a resident of New York made an assignment with preferences for the benefit of his creditors, and executed in due form a conveyance to his assignees of land in this state. The assignees sold the land to Bentley, who paid $6,000 in cash and assumed a mortgage for $2,000. Another subsisting mortgage was can-

celed at the time of the sale. Subsequently creditors of the assignor, all of whom were non-residents of this state, obtained judgments here and levied upon the land. We held that the conveyance to the assignees passed title to land in New Jersey, although the preferences were forbidden by our law. The ground of the decision, however, was that the deed was sufficient to pass the title in New Jersey; it was only the method of distribution of the assets of the assignor among his creditors that was inimical to our laws. That this was what Chief-Justice Beasley had in mind is shown by his statement that "no doubt is intended to be hinted as to the settled existence of the rule that the validity of every disposition of real estate must depend upon the law of the country in which that estate is situated." He added: "The deed in question has been regularly executed, acknowledged and recorded, and is in due legal form; in all ceremonious parts, therefore, the transaction is a compliance with our land regulations. What, then, is to render this title defeasible? I can imagine nothing that can be set up to invalidate it except the idea that the distribution of the assignment, to which this conveyance is ancillary, militates with the provisions of our statute upon that subject." And it was properly held that creditors not resident in New Jersey could not object to a method of distribution of the estate which was legal by the law of the domicile.

In *Parr* v. *Brady,* *37 N. J. Law (8 Vr.) 201 (1874),* a chattel mortgage was executed by a resident of New York upon a coach then in New York, and filed in New York in accordance with the laws of that state. The coach was subsequently brought by the owner (the mortgagor) into New Jersey, and sold here to a *bona fide* purchaser. The mortgage was not filed in this state, as then required by our statute. The case therefore involved a conflict between the laws of two states, in both of which the chattel had at different times its *situs,* and the court properly sustained the title under the earlier transfer. The opinion stated the general rule, as stated in the beginning of this opinion, that the law of the owner's domicile must govern, but recognized that "this rule has its exceptions, when the laws of different jurisdictions are in conflict, and particularly in cases where the *situs rei* at the time of the contract is in another state."

In *Marvin Safe Co.* v. *Norton, 48 N. J. Law (19 Vr.) 410 (1886)*, in the supreme court, the title was determined according to the law of the *situs*. The title reserved by the safe company was valid in Pennsylvania as long as the goods were in that state; the title acquired by Norton in New Jersey, under New Jersey law, was only such title as his vendor, Schwartz, then had, which was only a conditional title, and it was held that this title could not be made absolute as to tangible goods in New Jersey by a provision of the Pennsylvania law. There was no conflict between the title to the goods in Pennsylvania and the title to the goods in New Jersey; on the contrary, it was the very title acquired in Pennsylvania which subsequently passed by the transfer in New Jersey.

In *Cronan* v. *Fox, 50 N. J. Law (21 Vr.) 417 (1888)*, the title acquired by Fox in Maryland was at the time a valid title; it was invalid in Maryland in the event of failure to record as against creditors or purchasers; but no rights of creditors or purchasers intervened while the cattle were in Maryland, and this court held that the liability of the property to be seized and sold under a writ of attachment must be determined by the law of the state where the property then was, notwithstanding the domicile of all the claimants was in another state.

In *Knowles Loom Works* v. *Vacher, 57 N. J. Law (28 Vr.) 490 (1895)*, the supreme court held that the *situs* of the property, and not the *lex loci contractus,* determined the validity of the sale. The contract in that case was between a Massachusetts corporation, which owned the looms, then located in Worcester, sold them under a contract made in New York, and delivered them in Paterson. It was held that the *situs* of the looms was in this state. That was the place where the parties themselves contemplated that the looms should be permanently located. The judgment was affirmed in this court upon Justice Van Syckel's opinion.

In *Woolley* v. *Geneva Wagon Co., 59 N. J. Law (30 Vr.) 278 (1896)*, the wagons were, at the time of the contract, in New York; the vendee, and apparently the vendor also, was a resident of that state, and the property was brought into New Jersey without the knowledge of the vendor. Chief-Justice Beasley held

that our statute did not apply. Manifestly, the *situs* of the wagons had never been lawfully in New Jersey; they had been brought here without the owner's consent.

In the federal courts, also, it is held that the title of tangible chattels is determined by the law of the *situs*. *Green* v. *Van Buskirk, 5 Wall. 307; 7 Wall. 139; Hervey* v. *Rhode Island Locomotive Works, 93 U. S. 664.*

In the present case the vice-chancellor held that the law of the domicile of the purchaser must control; that the purchaser was a New Jersey corporation, and the transaction was governed by our statute. The case exhibits the difficulty which arises in determining the question by the law of the domicile. Not only may the parties have different domiciles, as in the present case, but several persons may be interested, either as vendors or vendees, each with a different domicile. The difficulty is not met by adopting the law of the domicile of the owner as the rule, for the very question to be decided is, who is the owner? The rule which looks to the law of the *situs* has the merit of adopting the law of the jurisdiction which has the actual control of the goods and the merit of certainty.

It is not necessary to the decision of the present case to go as far as the English cases have gone in following the law of the *situs*. The contract now in question was made in Pennsylvania, and was intended by the parties to be performed there; the chattels were at the time in Pennsylvania, and were removed to this state without the consent of the vendor; in Pennsylvania there was no transfer of title, but a mere contract of bailment. We think, in such a case, the law of Pennsylvania must control.

The vice-chancellor relied upon the case of *Knowles Loom Works* v. *Vacher, 57 N. J. Law (28 Vr.) 490,* but that case was not decided upon the ground that the vendee was a New Jersey corporation, but upon the ground that the property was to be delivered, and was delivered to and held by the purchaser in this state. Justice Van Syckel said that the *situs* of the property, and not the *lex loci contractus,* determined the validity of such sales. What the court held was that the *situs,* under the circumstances of that case, was in New Jersey.

In the present case the place of contract and the *situs,* at the time, was in Pennsylvania.

It is not necessary to decide whether or not the State of New Jersey, by virtue of the power it may exert over property within its jurisdiction, might divest a title which was good in Pennsylvania, for in our view of the case the law of this state does not have that effect. The contract between Lees and the Philadelphia Worsted Company was valid at common law. *Cole* v. *Berry, 42 N. J. Law* (*13 Vr.*) *308.* This rule was modified by a statute in 1889 (*P. L. 1889 p. 421; 1 Gen. Stat. p. 891 pl. 185–191*), which now appears in the act respecting conveyances (Revision of 1898). *P. L. 1898 p. 670 §§ 71, 72.* We think that this act is intended to affect contracts for goods subject to the jurisdiction of New Jersey at the time the contract is made, or intended by the parties at that time to be brought within the jurisdiction of this state. We are led to this conclusion by the provisions of the seventy-second section, which require the contract to be recorded in the office of the clerk of the court of common pleas of the county wherein the party contracting to buy, if a resident of this state, shall reside *at the time of the execution thereof,* and if not a resident of this state, then in the clerk's office of the county where the property bought shall be at the time of the execution of such instrument. It would be of no avail to require record in the county where the vendee resides at the time of the execution of the instrument unless it were meant that the record should be substantially contemporaneous with the date of the instrument; to require record in that county two years later, when the vendee might then reside elsewhere, would not serve the statute's purpose of constructive notice to judgment creditors and subsequent purchasers and mortgagees in good faith.

There is another difficulty in the way of applying our statute to the present case. The statute applies only to conditional sales. The contract now in question was a contract of bailment, but not a contract of conditional sale, as long as the goods were subject to the jurisdiction of Pennsylvania. Taking the view of the case most favorable to the judgment creditors, the contract did not become a contract of conditional sale until the

goods were moved to New Jersey, a year and a half after its execution. It would be a singular construction which would require a contract to be recorded in a county where one of the parties resided a year and a half before the contract became subject to the operation of the statute.

The authorities sustain the view we have adopted.

In *Varnum* v. *Camp, 13 N. J. Law* (*1 Gr.*) *326,* the title of the assignee to the goods in New York at the time of the assignment was sustained, notwithstanding the goods were afterward brought to Paterson and there levied upon.

In *Parr* v. *Brady, 37 N. J. Law* (*8 Vr.*) *201,* the title under the New York chattel mortgage was sustained, although the goods were afterwards brought to this state and sold, and although the mortgagee had not complied with the provisions of our Chattel Mortgage act, requiring the filing of the mortgage in the same language used in section 72 of the act respecting conveyances as to recording contracts of conditional sale. The supreme court said: "The intention to do so (*i. e.*, to prevent a foreign mortgage from having effect in this state) ought to be clearly manifested, when the object is to abridge the validity of a common law contract."

In *Woolley* v. *Geneva Wagon Co., 59 N. J. Law* (*30 Vr.*) *278,* it was the impossibility of complying with the statute that led the court to hold it not applicable.

. The courts of other jurisdictions are almost unanimous in sustaining a title good under the law of the original *situs,* although not good under the law of the jurisdiction to which the property may be removed by one party without the consent of the other. *United States Bank* v. *Lee, 13 Pet. 107; Shapard* v. *Hynes, 104 Fed. Rep. 449,* a well-considered opinion in the United States circuit court of appeals; *Edgerly* v. *Bush, 81 N. Y. 199; Nichols* v. *Mase, 94 N. Y. 160; Cleveland Machine Works* v. *Lang, 67 N. H. 348; 31 Atl. Rep. 20.*

In our judgment, the title of Lees' executors to the machinery in question was valid, and the order should have directed the receiver to surrender possession thereof to them.. It must therefore be reversed, with costs, and the cause remitted to the court of chancery for proceedings in conformity with this opinion.

*For affirmance*—PITNEY—1.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, GARRETSON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN—9.